## PEIK v. CHICAGO AND NORTH-WESTERN RAILWAY COMPANY.

### LAWRENCE v. SAME.

1. The Chicago and North-western Railway Company was, by its charter, and the charters of other companies consolidated with it, authorized " to demand and receive such sum or sums of money for the transportation of persons and property, and for storage of property, as it shall deem reasonable." The Constitution of Wisconsin, in force when the charters were granted, provides that all acts for the creation of corporations within the State "may be altered or repealed by the legislature at any time after their passage." *Held*, that the legislature had power to prescribe a maximum of charges to be made by said company for transporting persons or property within the State, or taken up outside the State and brought within it, or taken up inside and carried without.

2. Certain Wisconsin railroad corporations were consolidated with others of Illinois on terms which, in effect, required that the consolidated company should, when operating in Wisconsin, be subject to its laws. *Held*, that Wisconsin can legislate for the company in that State precisely as it could have legislated for its own original companies, if no consolidation had taken place.

3. The act of Wisconsin, approved March 11, 1874, entitled " An Act relating to railroads, express and telegraph companies, in the State of Wisconsin," is confined to State commerce, or such inter-state commerce as directly affects the people of Wisconsin. Until Congress shall act in reference to the relations of this consolidated company to inter-state commerce, the regulation of its fares, &c., so far as they are of domestic concern, is within the power of that State.

4. The decision of the Supreme Court of the State of Wisconsin, that said act of March 11, 1874, was not repealed by that entitled " An Act in relation to railroads," approved March 12, 1874, is binding upon this court.

5. Where property has been clothed with a public interest, the legislature may fix a limit to that which shall in law be reasonable for its use.

6. No party to this record can raise the question that the statute of Wisconsin violates the obligation of the consolidated company, under the land grant to the Wisconsin and Superior Railroad Company, to keep the part of its road which formerly belonged to the latter company open as a public highway for the use of the government of the United States, free from toll, &c.

APPEALS from the Circuit Court of the United States for the Western District of Wisconsin.

The appellants in the first case, non-residents of the State of Wisconsin, and owners of first-mortgage bonds of the Chicago and North-western Railway Company, filed their bill to restrain the company from obeying, and Paul, Osborn, and Hoyt, railroad commissioners, and Sloan, Attorney-General of Wisconsin, from enforcing, c. 273, Laws of 1874, of that State, which limits the rate of charges for transporting passengers and freights on all the railroads in the State.

The bill sets out the various acts incorporating the company and the companies with which it is consolidated, and it alleges that the company was authorized to give its bonds and mortgages to secure the payment of borrowed money; that the complainants are owners of bonds issued or guaranteed by the company, and secured by mortgages upon various portions of its railroad, executed pursuant to law; that the tariff of rates charged by the company before the passage of that chapter did not produce sufficient income to pay interest on its debt, the legal rate of interest allowed by the laws of the State to its stockholders, and expenses; that the enforcement of said chapter will cause the destruction of the securities held by the complainants; that the classes of freight established by sect. 3 of said chapter are different from the classes of freight estab-

lished by the laws of Illinois, Iowa, and Minnesota, for the transportation of freight upon the railroads of the company in those States, and that it is practically impossible to carry on the business of transporting freight from Wisconsin to either of those States; that the enforcement of said chapter will impair the obligation of the contract entered into between the company and the complainants; that said chapter is in violation of the thirteenth article of the bill of rights of the Constitution of Wisconsin, which declares that the property of no person shall be taken for public use without just compensation therefor; that the general assembly of Wisconsin had no constitutional power to pass said chapter; that the eighteenth section is a regulation of inter-state commerce; and that the company has never accepted said chapter, but will be obliged to conform to the reduced rates of fare and freight therein specified, or cease operations in Wisconsin, unless said chapter shall be held to be unconstitutional.

The bill in the second case was filed by stockholders of the company, and is substantially the same as that in the first case.

Chapter 273 classifies railroads in the State, fixes the limit of fare for the transportation of any person, classifies freights and the maximum rates therefor, and prescribes certain penalties and forfeitures for receiving any greater rate or compensation for carrying freight or passengers than the act provides. It appoints railroad commissioners, and prescribes their duties and powers. The eighteenth section is in the following words: —

"Nothing contained in this act shall be taken as in any manner abridging or controlling the rates for freight charged by any railroad company in this State for carrying freight which comes from beyond the boundaries of the State, and to be carried across or through the State; but said railroad companies shall possess the same power and right to charge such rates for carrying such freight as they possessed before the passage of this act."

The defendants in each case demurred to the bill of complaint therein filed. The demurrers were sustained, and the defendants brought the cases here.

*Mr. W. M. Evarts, Mr. C. B. Lawrence, Mr. B. C. Cook, Mr. John W. Cary,* and *Mr. E. W. Stoughton,* for the appellants.

The act entitled " An Act relating to railroads, express and telegraph companies, in the State of Wisconsin," approved March 11, 1874, regarded independently of the clause of the State Constitution, reserving the right to alter or repeal corporate charters, is a clear violation of that provision of the Federal Constitution which forbids a State to pass any law impairing the obligation of contracts. *Wilmington Railroad Co.* v. *Reid,* 13 Wall. 266 ; *Pacific Railroad Co.* v. *McGuire,* 20 id. 42 ; *Humphrey* v. *Pigues,* 16 id. 247 ; *Attorney-General* v. *The Railroad Companies,* 35 Wis. 425.

That clause must be construed in connection with another provision in the same instrument, forbidding the taking of private property for public use, except on due compensation, and in subordination to the Fourteenth Amendment to the Constitution of the United States, which ordains that " no State shall deprive any person of life, liberty, or property, without due process of law." No compensation has been tendered, and the act violates that amendment. *Wynehamer* v. *The People,* 13 N. Y. 392 ; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 466 ; *Green* v. *Biddle,* 8 Wheat. 355.

So long as the company operates the road, it has the right to demand a reasonable compensation for its services. That right is not a special franchise or privilege, but exists by universal law, and cannot be abridged or impaired. *Case of the State Freight Tax,* 15 Wall. 233 ; *Miller* v. *State,* 15 id. 478 ; *Holyoke Co.* v. *Lyman,* id. 500 ; *Von Hoffman* v. *Quincy,* 4 id. 535 ; *Curran* v. *State of Arkansas,* 15 How. 304 ; *Beardstown* v. *Louisville Railroad Co.,* 4 Met. (Ky.) 308 ; *Sage* v. *Dillard,* 15 B. Mon. (Ky.) 353 ; *Commonwealth* v. *Express Company,* 13 Gray, 253.

The question of what is a reasonable compensation is for judicial determination, and cannot be decided by the legislature. *Commonwealth* v. *Proprietors of Bridge,* 2 Gray, 337 ; *Attorney-*

NOTE. — These cases were elaborately and at great length argued by the respective counsel. It will be impracticable for the reporter to furnish more than a very condensed synopsis of the argument. No attempt will be made to give the particular points which each of the counsel maintained. The argument on each side is given as a whole.

*General* v. *The Railroad Companies*, *supra*; *P. W. & B. Railroad Co.* v. *Bower*, Law Reg., March, 1874; *Chicago & Alton Railroad Co.* v. *The People*, 67 Ill. 11; *State* v. *Noyes*, 47 Me. 203; *Stamford* v. *Pawlet*, 1 Cromp. & J. 57. The State, being a party to the contract, cannot prescribe the compensation by a subsequent enactment which shall bind the other party. Were it otherwise, the will of each succeeding legislature, and not the charter, would determine the powers and rights of the company.

Conceding that the charter which gave the franchise be subject to repeal, the State cannot take from the company its roadbed and its rolling-stock, or the income derived from their use, without making just compensation. The Supreme Court of Wisconsin, in *Attorney-General* v. *The Railroad Companies*, *supra*, in granting an injunction to restrain the company from operating its road except upon the terms prescribed, declares that "the material property and rights of corporations should be inviolate." This act, so far from leaving them inviolate, takes the income, and thus as effectually deprives the company of the beneficial use of its property, and the means of performing its engagements with its creditors, as if the road was confiscated. There is no substantial difference between a law which diminishes the income of a company thirty per cent, by reducing its tariff of rates, and one which requires it to pay that per cent to the treasurer of State, and obliges him to distribute it *pro rata* among those who paid fares or freight to the company.

In all the adjudged cases on the subject the rulings have been uniform, that there are some necessary limits to the exercise of the power which the State assumes to amend or repeal charters, and among them is, that the character of the companies shall not be changed, nor the purposes of their creation defeated, nor vested rights of property impaired. *Sage* v. *Dillard*, 15 B. Mon. (Ky.) 353.

"It seems to us," says the Supreme Court of Massachusetts, in *Commonwealth* v. *Essex Co.*, 13 Gray, 253, "that this power must have some limit, although it is difficult to define it. Perhaps the rule is this, that where, under a power in the charter, rights have been acquired and become vested, no amendment

or -alteration of the charter can take away the property or rights which have become vested under a legitimate exercise of the powers granted."

Tried by this principle, thus explicitly announced, and which is substantially sustained by this court in *Holyoke Company* v. *Lyman* and *Miller* v. *State, supra*, the act cannot be justified. The vital element in the ownership and management of railway property, the right to classify the various kinds of freight, and to determine and receive the proper compensation, is taken from the corporation and vested in the State.

Independently of the foregoing considerations, applicable to all railway companies in the State, the Chicago and Northwestern Railway Company occupies a peculiar position, which for two reasons places it beyond the reach of the act: —

1. The sale in 1859 of the Chicago, St. Paul, and Fond du Lac road, which is a part of the Chicago & North-western road, under a deed of trust, and b) authority of the legislature, vested the title to the first road in certain purchasers, with a right to operate it. The subsequent grant of corporate fran chises conferred on them no additional right in or to the road, and the alteration or repeal of the charter cannot impair any right which they, by their purchase, acquired and held as natural persons.

2. The legislature of Wisconsin entered into a contract with an Illinois corporation, by which the latter acquired rights in that road which the act impairs, in violation of the tenth section of the first article of the Federal Constitution. *Coe* v. *The Columbus, P. & Ind. Railroad Co.*, 10 Ohio, 336 ; *Atkinson* v. *M. & C. Railroad Co.*, 15 id. 36 ; *Curran* v. *State of Arkansas*, 15 How. 534 ; *Railway Company* v. *Wheaton*, 13 Wall. 284 ; *Morris Canal & Bank Co.* v. *Townsend*, 24 Barb. 658.

The act violates in principle the congressional land grant of June 3, 1856, to which was annexed the condition that the roads of the companies receiving its benefits should " remain public highways for the use of the government of the United States, free from tolls or other charges upon the transportation of property or troops of the United States," and that the mails should be transported at such prices as Congress might direct.

If Wisconsin can pass such an act, it can fix a rate of compensation which will prevent the operation of the road, and disable the company from performing its duties to the general government. *McCulloch* v. *State of Maryland*, 4 Wheat. 316 ; *Osborn* v. *Bank of United States*, 9 id. 740.

The act violates the contract entered into between the corporation and its bondholders, which the State had authorized, and thus violates that provision of the Federal Constitution which forbids a State to pass a law impairing the obligation of contracts. *Durfee* v. *Old Colony*, 5 Allen, 247 ; *Curran* v. *State of Arkansas*, 15 How. 304 ; *Woodruff* v. *Trapnall*, 10 id. 190 ; *Baring* v. *Dabney*, 19 Wall. 8 ; *Von Hoffman* v. *City of Quincy*, 4 id. 458 ; *Hawthorn* v. *Calef*, 2 id. 10 ; *Tomlinson* v. *Jessup*, 15 id. 457.

The act is a regulation of inter-state commerce, and for that reason unconstitutional. *Case of the State Freight Tax*, *supra*.

*Mr. I. C. Sloan* and *Mr. L. S. Dixon*, contra.

The power reserved to the general assembly by the Constitution to alter or repeal charters, and the effect of its exercise, are the controlling questions in this controversy, and they are not new, either in the courts of Wisconsin, in those of the several States, or in this court.

As early as June, 1854, before the contracts relied upon by the complainants were entered into, or any road now owned and operated by the defendant company was built, or any indebtedness incurred by it or any of its predecessors, the Supreme Court of Wisconsin held that, by the operation of such reserved power, an act of the legislature was valid, although it restricted the amount which, under a charter previously granted, a plank-road company might have charged and received for tolls. *The Madison, Watertown, & Milwaukee Plank-road Co.* v. *Reynolds*, 3 Wis. 287.

The same principle has also been announced in *Pratt* v. *Brown*, id. 603 ; *Nazro* v. *Merchants' Insurance Co.*, 14 id. 295 ; *Kenosha, Rockford, & Rock Island Railroad Co.* v. *March*, 17 id. 16 ; *Whiting* v. *The Sheboygan & Fond du Lac Railroad Co.*, 25 id. 197 ; *State* v. *Milwaukee Gas Light Co.*, 29 id. 461 ; *The West Wisconsin Railroad Co.* v. *The Board of Supervisors*

*of Trempealeau County*, 35 id. 257 ; *The Attorney-General* **v.**
*The Railroad Companies*, id. 425.

In the last case the court remarks : —

"The power to repeal can bear but one construction. The power
to alter depends on the meaning of the word 'alter.' To alter is
to make different, without destroying identity (Crabb) ; to vary,
without entire change (Webster and Imp. Dict.). A corporate
charter of one kind cannot be altered to a charter of an entirely
different kind. But a corporate charter may be altered so as to
make it different in detail, so long as the general identity of the
corporation remains; so that it is varied without entire change.
This is the obvious meaning to lawyer or layman. Arguments
*ab inconvenienti* cannot weigh against the manifest meaning of the
word used : they may go to impeach the wisdom of the power, but
not to impair its import."

In this court a similar construction has been given to the
same words, and the scope and effect of the reserved power held
to be the same, whether it be contained in a special act creating
a corporation, or in a general law applicable to all future acts
of incorporation, unless specially excepted, or, as in this in-
stance, in the Constitution, under which no unalterable or irre-
pealable charter can be granted. *Sherman* v. *Smith*, 1 Black,
587 ; *Pennsylvania College Cases*, 13 Wall. 190 ; *Tomlinson* v.
*Jessup*, 15 id. 454 ; *Miller* v. *State*, id. 478 ; *Holyoke Company*
v. *Lyman*, id. 500 ; *Olcott* v. *The Supervisors*, 16 id. 678.

Charters are to be construed most favorably to the State,
and nothing passes by implication. *The Dubuque & Pacific
Railroad Co.* v. *Litchfield*, 23 How. 66 ; *The Binghamton Bridge*,
3 Wall. 51 ; *Home of the Friendless* v. *Rouse*, id. 430.

The controversy is therefore reduced to the meaning of " alter."
The remark in *Tomlinson* v. *Jessup*, *supra*, that "rights ac-
quired by third parties stand upon a different footing," was
obviously not intended to intimate that the legislature, in the
exercise of the power conferred by the Constitution, may not,
by altering the charter of a company without its consent, operate
upon its franchises, whenever the public interests would be
thereby subserved, although the effect may be incidentally to
diminish its resources for the payment of its debts, or depreciate
the value of its stock or its bonds. Such an effect constitutes

no valid ground of complaint: if it did, the exercise of the power would be always defeated. Few corporations are free from debt and all of them have stockholders.

Whatever is given by statute may be taken away by statute. *State* v. *Hœflinger*, 31 Wis. 262 ; *Perrine* v. *Chesapeake & Delaware Canal Co.*, 9 How. 184.

The right to charge tolls for the use of roads, bridges, or ferries is a franchise. It was so conceded by counsel on both sides in *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, and directly affirmed by this court in *Perrine* v. *Chesapeake & Delaware Canal Co.*, *supra*, and in *Olcott* v. *The Supervisors*, *supra*.

Like rulings have been had in *Blisset* v. *Hart*, Willes, 512 ; *Whiting* v. *The Sheboygan & Fond du Lac Railroad Co.*, *supra* ; *Beekman* v. *Saratoga & Schenectady Railroad Co.*, 3 Paige, 75 ; *Olcott* v. *Banfill*, 4 N. H. 545 ; *State* v. *Boston, Concord, & Montreal Railroad Co.*, 25 Vt. 442 ; *Erie & North-east Railroad Co.* v. *Casey*, 26 Penn. St. 287 ; *Boston & Lowell Railroad Corporation* v. *Salem & Lowell Railroad Co.*, 2 Gray (Mass.), 27 ; *Raritan & Delaware Bay Railway Co.* v. *Delaware & Raritan Canal Co.*, 18 N. J. Eq. 570 ; *Delaware, Lackawanna, & Western Railway Co.* v. *Erie Railway Co.*, 21 id. 298 ; *McGregor* v. *Erie Railway Co.*, 35 N. J. L. 97 ; *Blake* v. *Railroad Company*, 19 Minn. 418.

The exercise of the reserved power in question is sustained by the following cases : —

In New York : *McLaren* v. *Pennington*, 1 Paige, 102 ; *The Schenectady, &c. Plank-road Co.* v. *Thatcher*, 10 N. Y. 102 ; *Buffalo & N. Y. City Railroad Co.* v. *Dudley*, 14 id. 336 ; *In the Matter of Oliver Lee & Co.'s Bank*, 21 id. 9 ; *In the Matter of the Reciprocity Bank*, 22 id. 9 ; *The Albany Northern Railroad Co.* v. *Brownell*, 24 id. 345 ; *The Northern Railroad Co.* v. *Miller*, 10 Barb. 260 ; *White* v. *Syracuse & Utica Railroad Co.*, 14 id. 559 ; *Hyatt* v. *McMahon*, 25 id. 457 ; *In the Matter of the Reciprocity Bank*, 17 How. Pr. 323.

In Massachusetts : *Crease* v. *Babcock*, 23 Pick. 334 ; *Roxbury* v. *The Boston & Prov. Railroad Corporation*, 6 Cush. 424 ; *Boston & Lowell Railroad Corporation* v. *Salem & Lowell Railroad Co.*, 2 Gray, 1 ; *Mass. General Hospital* v. *St. Mut. Life*

*Ass. Co.*, 4 id. 227; *Commonwealth* v. *Essex Company*, 13 id. 239; *Fitchburg Railroad Co.* v. *Grand Junct. Railroad Co.*, 4 Allen, 198; *Commonwealth* v. *Eastern Railroad Co.*, 103 Mass. 254; *Commissioners of Fisheries* v. *Holyoke Company*, 104 id. 446; *Mayor, &c. of Worcester* v. *Norwich & Worcester Railroad Co.*, 109 id. 103; *Parker* v. *Metropolitan Railroad Co.*, id. 506.

In Maine: *Proprietors, &c.* v. *Haskell*, 7 Greenl. 474; *Read* v. *Frankfort Bank*, 23 Me. 318; *Meadow Dam Company* v. *Gray*, 30 id. 547; *Oldtown & Lincoln Railroad Co.* v. *Veazie*, 39 id. 571.

In New Jersey: *Story* v. *The Jersey City, &c. Plank-road Co.*, 16 N. J. Eq. 13; *State* v. *Miller*, 30 N. J. L. 368; *State ex rel., &c.* v. *Miller*, 31 id. 521; *State ex rel., &c.* v. *The Mayor, &c.*, id. 575.

In Indiana: *Wilson* v. *Tesson*, 12 Ind. 285.

In Rhode Island: *Bailey* v. *Trustees, &c.*, 6 R. I. 491; *Gardner* v. *Hope Insurance Co.*, 9 id. 194.

In Minnesota: *Perrin* v. *Oliver*, 1 Minn. 202; *Blake* v. *Railroad Company*, 19 id. 418.

In Iowa: *Miner's Bank* v. *United States*, 1 Green, 563.

In Kentucky: *Sage* v. *Dillard*, 15 B. Mon. 347; *Louisville* v. *President, &c.*, id. 642.

In Pennsylvania: *Erie & North-east Railroad Co.* v. *Casey*, 26 Penn. St. 287.

The creation of corporations is a prerogative of sovereignty, to be exercised or not, as the legislature shall see fit; and at such times, in such manner, and subject to such conditions and reservations as it shall determine, regard being had only to the restrictions which the Constitution imposes upon the law-making power. The latter, therefore, by statute, or the people, by fundamental law, may reserve the absolute control over these artificial persons; and there is no authority lodged elsewhere to interfere with or prevent the exercise of this sovereign right. The government which creates may reserve the power to destroy them, or to prescribe the condition upon which their future or continued existence shall depend.

This principle has been fully and clearly recognized by this court. *Railroad Company* v. *Maryland*, 21 Wall. 471; *McCul-*

*lach* v. *Maryland*, 4 Wheat. 427; *Providence Bank* v. *Billings*, 4 Pet. 513; *Bank of Commerce* v. *New York City*, 2 Black, 620; *Veazie Bank* v. *Fenno*, 8 Wall. 533; *Charles River Bridge* v. *Warren Bridge*, *supra*; *Turnpike Company* v. *State*, 3 Wall. 210.

The bondholders and mortgagees of the company have no greater rights or immunity from legislative control than has the company itself, and the existence of their claims in no way impairs or defeats the power to alter or repeal the corporate franchises.

None of the cases cited by the complainants sustain the doctrine contended for by them. On the other hand, the rule of law is well settled in this court. *Mumma* v. *The Potomac Company*, 8 Pet. 281; *Pennsylvania College Cases*, *supra*; *Curran* v. *The State of Arkansas*, 15 How. 311; *Read* v. *Frankfort Bank*, 23 Me. 318.

The stockholders and creditors invested their money subject to the reserved power, of which by presumption of law they had notice. *The East Anglican Railways Co.* v. *The Eastern Counties Railway Co.*, 11 C. B. 775.

The act limiting the tolls and charges of the railroad company is not an encroachment upon the power of Congress to regulate commerce among the several States. No discrimination is made between citizens of the State and citizens of other States. *Case of the State Freight Tax*, 15 Wall. 277; *Railroad Company* v. *Richmond*, 19 id. 584; *Railroad Company* v. *Maryland*, 21 id. 456.

Nor does it contravene the article of the State Constitution which provides that the property of no person shall be taken for public use without just compensation therefor. *Gilman* v. *City of Sheboygan*, 2 Black, 513.

The position cannot be maintained that the legislature lost or forfeited the use of the reserved power by authorizing a corporation to consolidate with one of the same or a different name, incorporated in another State, with an irrepealable charter. A power granted by the Constitution cannot in this way be released or destroyed. By the consolidation, the corporations acquired an identity of interest, but did not necessarily cease to be distinct entities. *Farnum* v. *Blackstone*,

1 Sumn. 47; *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665.

A corporation can have no existence beyond the limits of the State or sovereignty which brings it into life and endows it with its faculties and powers. *The O. & M. Railroad Co.* v. *Wheeler*, 1 Black, 286; *McGregor, qui tam,* v. *Erie Railway Co.*, 35 N. J. L. 115. The Illinois Company had no authority to consolidate with a corporation created by and operating in Wisconsin, except such as was conferred by an express legislative enactment, the acceptance of which subjected it to all the conditions, obligations, and liabilities which the Constitution and laws of Wisconsin imposed. The consolidated company sustained in Wisconsin the same relation to that State as did the original corporation.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

These suits present the single question of the power of the legislature of Wisconsin to provide by law for a maximum of charge to be made by the Chicago and North-western Railway Company for fare and freight upon the transportation of persons and property carried within the State, or taken up outside the State and brought within it, or taken up inside and carried without. That company was by its charter authorized " to demand and receive such sum or sums of money for the transportation of persons and property, and for storage of property, as it shall deem reasonable." Charter of the Wisconsin & Superior Railroad Co., sect. 6. Other forms of expression are used in charters granted by Wisconsin to other companies, which by consolidation have become merged in the present corporation; but they are all the same in effect. None go beyond this.

The Constitution of the State in force when each of the several acts of incorporation was passed, provides that all acts for the creation of corporations within the State " may be altered or repealed by the legislature at any time after their passage." Art. 11, sect. 1.

It was conceded upon the argument that this reserved power of the Constitution gave the legislature " the same power over the business and property of corporations that it has over indi-

viduals," or, as it is expressed by one of the counsel, "nothing more could have been intended than to leave the stockholders in corporations in such a position that the legislature could place them on the same footing with natural persons before the law, and disable them from permanently evading the burdens on all others engaged in similar vocations, by appealing to the letter of their charter. Their object was not to open the door to oppression, but to secure simple equality between citizens of the State, whether working singly or in corporate associations." And, in another place, the same learned counsel says : " The privilege, then, of charging whatever rates it may deem proper is a franchise, which may be taken away under the reserved power, but the right to charge a reasonable compensation would remain as a right under the general law governing natural persons, and not as a special franchise or privilege."

Without stopping to inquire whether this is the extent of the operation of this important constitutional reservation, it is sufficient to say that it does, without any doubt, have that effect. In *Munn* v. *Illinois, supra,* p. 113, and *Chicago, Burlington, & Quincy Railroad Co.* v. *Iowa, supra,* p. 155, we decided that the State may limit the amount of charges by railroad companies for fares and freights, unless restrained by some contract in the charter, even though their income may have been pledged as security for the payment of obligations incurred upon the faith of the charter. So far this case is disposed of by those decisions.

It remains only to consider a few questions raised here which were not involved in the cases that have already been decided.

1. As to the consolidation of the Wisconsin corporations with those of Illinois. For the purpose of promoting this consolidation, the legislature of Wisconsin passed an enabling act, and, in so doing, provided that if such consolidation was perfected, " the consolidated company shall be and remain subject to the laws of the State of Wisconsin and the State of Illinois, respectively, and shall have in all respects the same privileges as though this consolidation had not taken place ; provided, that the laws of Illinois shall have no force and effect in the State of Wisconsin." Wisconsin Consolidation Act, March 10, 1855,

sect. 8.  The second section of the same act also provided that the consolidated company should "have all the rights, privileges, and franchises conferred on the said companies [those in Illinois as well as those in Wisconsin] by the laws of the States of Illinois and Wisconsin, respectively, the same, and not otherwise, as though the said consolidation had not taken place."   In this way, Wisconsin in effect said to the Illinois companies, "You may consolidate your interest with those of the named companies in this State, and form one corporation in the two States; but, in so doing, you must, in Wisconsin, be subject to our laws.   In Wisconsin, all corporations are liable to have their charters altered or repealed at the will of the legislature.   If you are willing to take this risk, we will care for you, within our jurisdiction, precisely as we do for our own corporations."

Upon these terms the consolidation was finally perfected, and the consolidated company now exists under the two jurisdictions, but subject to the same legislative control as to its business in Wisconsin as private persons.   The Illinois companies might have stayed out.   But they chose to come in, and must now abide the consequences.   Thus Wisconsin is permitted to legislate for the consolidated company in that State precisely the same as it would for its own original companies, if no consolidation had taken place.   This is the contract by which the Illinois stockholders must abide.   Having availed themselves of what they supposed to be the advantages of the consolidation, they cannot repudiate their corresponding obligations.

There is nothing, therefore, in this objection.

2. The obligations of the consolidated company, under the land grant to the Wisconsin and Superior Railroad Company, to keep that part of its road which formerly belonged to that company open as a public highway for the use of the government of the United States, free from toll or other charges upon the transportation of property or troops of the United States, and to transport the mails at such prices as Congress may by law direct.   The United States do not complain.   It will be time enough for us to consider this objection when they do.

3. As to the effect of the statute as a regulation of interstate commerce.   The law is confined to State commerce, or

such inter-state commerce as directly affects the people of Wisconsin. Until Congress acts in reference to the relations of this company to inter-state commerce, it is certainly within the power of Wisconsin to regulate its fares, &c., so far as they are of domestic concern. With the people of Wisconsin this company has domestic relations. Incidentally, these may reach beyond the State. But certainly, until Congress undertakes to legislate for those who are without the State, Wisconsin may provide for those within, even though it may indirectly affect those without.

4. As to the repeal of this act by that of March 12, 1874. The Supreme Court of Wisconsin has decided that there is no such repeal as is claimed. *The Atty.-Gen.* v. *Railroad Companies*, 35 Wis. 427. This is binding on us.

5. As to the claim that the courts must decide what is reasonable, and not the legislature. This is not new to this case. It has been fully considered in *Munn* v. *Illinois*. Where property has been clothed with a public interest, the legislature may fix a limit to that which shall in law be reasonable for its use. This limit binds the courts as well as the people. If it has been improperly fixed, the legislature, not the courts, must be appealed to for the change.

6. The sale of the Chicago, St. Paul, and Fond du Lac Railroad Company. The charter of the company whose road was sold does not confer any right which has been impaired by this legislation. That company, like other railroad companies in Wisconsin, was subject to regulation as to its fares, &c. It is, therefore, unnecessary to consider what might under other circumstances have been the effect of such a sale.

This disposes of the case. No other questions need be considered. If the question ever arises whether the company can be compelled to continue its business at the prices fixed, it will be time enough for us to pass upon it when it reaches here in due course of proceeding. It is not here now.

*Decrees affirmed.*

MR. JUSTICE FIELD and MR. JUSTICE STRONG dissented.