CHICAGO, B. & Q. R. CO. v. WINNETT et al., State Ry. Com'rs.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1908.)

No. 2,722.

INJUNCTION—SUBJECTS OF PROTECTION AND RELIEF—CONTROLLING ACTION OF STATE BOARD.

A court of equity is without power to interfere by injunction to control in advance the exercise of the legislative power conferred on the State Railway Commission by the Constitution and statutes of Nebraska to fix reasonable and just rates for the transportation of property between points within the state, by restraining such commission from considering or acting upon the question of establishing new rates on any given commodities, or from giving notice to a railroad company of any order which may be adopted establishing such rates.

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Nebraska.

W. D. McHugh, for appellant.

W. T. Thompson, Charles H. Aldrich, and Halleck F. Rose, for appellees.

Before SANBORN and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. The record in this case discloses that on or about the 17th day of August, 1907, appellees, acting as the Nebraska State Railway Commission, issued a notice to appellant that on the 9th day of September, 1907, at 10 o'clock a. m., said Railway Commission would consider the question of fixing the rates on grain and grain products in straight car loads, transported between points in Nebraska, and that the rates contained in a schedule attached to said notice would be adopted with such changes and modifications as should be deemed necessary unless good and sufficient cause should be shown why they should not be. The only good and sufficient cause shown by appellant pursuant to the invitation contained in said notice was the filing of the bill in this case on the 10th day of September, 1907, while said Railway Commission was engaged in considering the matter mentioned in said notice and before said Commission had reached any conclusion therein. Upon the filing of said bill, appellant obtained an order fixing the 23d day of September, 1907, as the time when the court would hear an application for a temporary injunction, and also in the meantime restraining appellees, as members of the Nebraska State Railway Commission, from mailing to appellant any copies or copy of any order reducing the rates for the transportation of corn, wheat, and flaxseed, and from in any manner giving any notice to appellant of any order of said board reducing the rates for the transportation of corn, wheat, and flaxseed in the state of Nebraska, charged and maintained by appellant. At the time appointed for the hearing of the motion for a temporary injunction appellees appeared and filed a demurrer to the bill. In ad-

dition to the general ground of want of equity, said demurrer specified the following grounds:

"(3) It appears on the face of said bill that the schedule of rates for the transportation by railroads within the state of Nebraska of the commodities of corn and wheat mentioned and complained of therein has not been fixed, determined on, or adopted by defendants, and the consequences alleged by said bill to be threatened are not cognizable in equity prior to the adoption of such rates by the Nebraska State Railway Commission.

"(4) The functions of the Nebraska State Railway Commission to fix and determine upon reasonable rates for transportation of commodities by railroads within said state are legislative, and are delegated to it pursuant to an amendment of the Constitution of said state, duly adopted, and the powers of defendants in that behalf as members of said commission are co-ordinate and independent of the judiciary and not subject to control or restraint by a court of equity till after its acts have been duly passed and finally adopted; and so upon the face of complainant's bill showing no final action has been had by defendants touching the adoption of the schedule of rates complained of this court has no jurisdiction to hear and determine this action.

"(5) It appears on the face of said bill that the fixing of schedules of rates for transportation of corn and wheat, the acts complained of, are not threatened to be done in any event till after complainants shall have been given a hearing and opportunity to show cause why the same should not be adopted, and that complainant had an adequate remedy at law."

Upon said hearing the court sustained said demurrer, refused to grant a temporary injunction as prayed, and dissolved the restraining order theretofore granted. Appellants declining to plead further, final decree dismissing the bill was entered, and appellant has appealed therefrom to this court. The Circuit Court refused to continue the restraining order pending the appeal, and the record does not show what the Railway Commission has done as to the matters referred to in the notice of August 17, 1907. It was stated, however, at the argument in this court by counsel for the appellees, that the Railway Commission had never as yet concluded its consideration of said matters. In view of this condition of the record, we turn to the allegations of the bill with some interest. The demurrer admits all the facts alleged therein that are well pleaded. It does not admit conclusions of law or mere matters of opinion not justified by the facts. The following material facts appear in the bill: Appellant is a citizen of Illinois. Defendants are citizens of Nebraska, and constitute the Nebraska State Railway Commission. The requisite amount in controversy to give jurisdiction. Appellant is the owner and engaged in the operation of a system of railways extending through the states of Illinois, Iowa, Missouri, Kansas, Nebraska, Colorado, Wyoming, and Montana.

On the 17th day of August, 1907, said Railway Commission served a notice upon appellant in words and figures as follows:

"Lincoln, Nebraska, August 17, 1907.

"Notice is hereby given the Chicago, Burlington & Quincy Railroad Company that at 10 o'clock a. m., September 9, 1907, the Nebraska State Railway Commission will consider the question of fixing the rates on grain and grain products in straight car loads, transported between points within this state, and the rates hereto attached will be adopted, with such changes and modifi-

cations as may be deemed necessary, unless good and sufficient cause is shown why they should not be.

"[Seal.]      Nebraska State Railway Commission,
"By H. J. Winnett, Chairman.

"Attest:  Clark Perkins, Secretary."

The rates now in force on appellant's lines in Nebraska were established by the Legislature of said state by an act approved April 8, 1907. Said act is as follows:

"Section 1. (Maximum freight rates.) It shall be unlawful for any railway company or common carrier, operating or doing business in the state of Nebraska, to charge, collect or receive for the transportation of live stock, potatoes, grain and grain products, fruit, coal, lumber, or building material in carload lots, within the state of Nebraska, more than eighty-five per cent. (85%) of the amount fixed in the classification and schedules of such railway companies or common carriers for the transportation of such property in force and effect on their various lines of railway on the first day of January, 1907, until after the State Railway Commission shall have provided a greater rate upon any article or property in such schedules from the rate herein fixed.

"Section 2. (Reasonableness of rate; hearing.) The State Railway Commission shall have the power to hear and determine whether or not the freight rate upon any article or articles in such schedule or classification of rates is either so high as to be unjust to shippers, or so low as to be unremunerative or unjust to any common carrier affected thereby and upon complaint in writing, of any person or corporation affected thereby, particularly specifying the article or articles upon which such rates are either too high or too low and the facts in connection therewith, said railway commission shall set such cause for hearing and upon a trial thereon and a full hearing after notice thereof, shall either raise or lower the rate herein fixed upon such article or articles to the end that the same shall be just and reasonable to all parties concerned." Laws 1907, p. 345, c. 95.

The bill further alleges: That the rates fixed by said act are unjust, unreasonable, and confiscatory; that the rates between points in Nebraska for the transportation of corn, wheat, and flaxseed as stated in the schedules attached to the notice served on appellant on or about August 17, 1907, are very much lower than the rates on said commodities fixed by the Legislature in said act of April 8, 1907; that the rates stated in said schedule attached to said notice are confiscatory, unjust, and unreasonable and will directly interfere with interstate commerce if established and enforced; that no complaint by any person or corporation affected by the rates named in said act of April 8, 1907, has been filed with or presented to the said defendants or either of them or the Nebraska State Railway Commission. The bill then proceeds as follows:

"Your orator further avers that, notwithstanding the facts aforesaid, the said defendants, constituting the said Nebraska State Railway Commission, threaten and intend, and unless restrained by the order of this honorable court will attempt, to establish, and establish, as the rates for the transportation of said grain within the state of Nebraska, the rates named and set forth in said schedules, and will require your orator to make, keep, and publish the schedules showing the said rates and charges and will at once and without opportunity to be heard mail copies thereof to your orator and give notice thereof to your orator, and will require your orator to transport said grain within the state of Nebraska at said rates, and will attempt to enforce its said orders, and will institute proceedings against your orator for any violation of said order, and will institute various proceedings against your orator for penalties for violation of the said order, and will institute various proceed-

ings against the officers and agents of your orator for violations of the said order, all of which will give rise to a great multiplicity of suits, and will constitute a continuous and serious interference with and an interruption of the business of your orator, and will be a continuing trespass upon the rights of your orator.

"And your orator further avers that if the said defendants, as members of the Nebraska State Railway Commission, should make an order putting into effect the said schedule of rates or any schedule of rates for the transportation of said commodities lower than those now in force and should mail copies thereof to your orator, then, under the laws of Nebraska, every person interested in said order, which would include all producers and shippers in grain, would have a right to institute proceedings against your orator to enforce the provisions thereof, and your orator avers that, if such order is made and said copy mailed, very many of the persons interested in said order would institute separate proceedings in the various counties of this state against your orator; that many county attorneys throughout the state would, in their respective counties, institute criminal proceedings against your orator; that many private persons would file complaints in many counties and institute criminal proceedings against your orator; and that many private persons and county officials would file complaints and institute many criminal proceedings in various counties against the various agents and officers of your orator: and that grand juries throughout the state would return indictments in various counties against your orator and against the various agents and officers of your orator—all of which would give rise to a great multiplicity of suits and subject your orator to ruinous expense and greatly embarrass your orator in the transaction of its business. And if your orator in a proper proceeding brought for that purpose should, upon a true and sufficient showing, apply for an injunction to prevent all of said proceedings, the parties to be affected thereby are too numerous to be joined, and the enforcement of any writ of unjunction would be difficult and give rise to conflicts and the remedy of your orator would be rendered much less efficacious."

The following is the prayer of the bill:

"In consideration whereof, and for as much as your orator is remediless in the premises by the strict rules of the common law, and can have relief only in a court of equity where matters of this kind are properly cognizable and relievable, your orator prays that the said defendants, and each of them as members of and constituting the Nebraska State Railway Commission, be upon the filing of this bill temporarily restrained and enjoined from putting into effect or attempting to put into effect, and from establishing or attempting to establish, the said schedules of rates as the rates to be charged by your orator for the transportation of said grain within the state of Nebraska, and from mailing copies thereof to your orator, and from giving notice thereof to your orator, and from in any manner reducing or attempting to reduce the rates to be charged by your orator for the transportation of said grain within the state of Nebraska, and from mailing to your orator any copy or copies of any such order, and from giving to your orator any notice of any kind of any order reducing rates on said products, and that upon a final hearing hereof that the said injunction be made perpetual, and that your orator have such other and further relief as the circumstances of the case shall require and as shall be agreeable to equity and good conscience."

As it is not even pretended in the bill or outside of it that appellees, as the Nebraska State Railway Commission, have established or fixed any rates such as are contained in the schedules attached to the notice of August 17, 1907, or any other rates, it must necessarily follow that the bill in this case has no other object than to perpetually restrain the Nebraska State Railway Commission from even considering the question of establishing or fixing a rate for the transporta-

tion of grain and grain products in straight car loads between points in Nebraska.

With reference to the power of the Nebraska State Railway Commission to enter upon the consideration of the subject mentioned in the notice of August 17, 1907, under the laws of Nebraska, in addition to the act of April 8, 1907, we quote the following from the Constitution of Nebraska:

"There shall be a state railway commission consisting of three members who shall be first elected at the general election in 1906, whose term of office except those chosen at the first election under this provision shall be six years and whose compensation shall be fixed by the Legislature. Of the three commissioners first elected the one receiving the highest number of votes shall hold his office for six years, the next hightest for four years and the lowest two years. The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But in the absence of specific legislation the commission shall exercise the powers and perform the duties enumerated in this provision." Const. art. 421a.

We also quote the following from the act of the Legislature of the state of Nebraska approved March 27, 1907:

"Sec. 2 (b). Said commission shall have the power to regulate the rates and services of, and to exercise a general control over all railroads, express companies, car companies, sleeping car companies, freight and freight line companies and all other common carriers engaged in the transportation of freight or passengers within the state."

"Sec. 2 (d). Said commission shall have the power, and it shall be its duty to make all necessary classifications and to fix all necessary rates, charges and regulations to govern and regulate the freight and passenger tariffs of railway companies and common carriers, the power to correct abuses and prevent unjust discriminations, extortions and overcharges in rates of freight and passenger tariffs on the different railroads in this state, and to enforce the same by having the penalties inflicted as hereinafter provided, through proper courts having jurisdiction.

"Sec. 2 (e). Said commission shall have the power, and it shall be its duty, to fairly and justly classify and subdivide all freight and property of whatsoever character and description that may be transported over the railways of this state, into such general and special classes as may be found necessary and expedient, and to fix to each class or subdivision of freight, a reasonable rate for each railway company or common carrier, for the transportation of each of said classes and subdivisions; the classifications herein provided for shall apply to and be the same for all railway companies or common carriers subject to the provisions of this act." Laws 1907, p. 314, c. 90.

As all rightful legislative power, except as its exercise may be limited by the federal or state Constitutions, is possessed by the Legislature of Nebraska, it is incorrect to speak of the Constitution of Nebraska as a grant of power so far as the Legislature is concerned. The Legislature would have full power to delegate to the Nebraska State Railway Commission the authority to fix rates for the transportation of passengers and freight by common carriers within the state of Nebraska if the Constitution were silent upon that subject. It seems clear therefore that the power to act in the matter in controversy, so far as the laws of Nebraska are concerned, has been fully conferred. That the general power to fix rates for the transportation of passengers and freight by common carriers between points within a state belongs to the Legislature of each state, that said power may

be exercised by the Legislature itself or be delegated by it to a commission established for that purpose, and that courts of equity will not interfere by injunction to control the exercise of this power in advance, are propositions established beyond question by the following authorities: Munn v. Illinois, 94 U. S. 113, 144, 24 L. Ed. 77; Peik v. Chicago N. W. Railway, 94 U. S. 164, 178, 24 L. Ed. 97; Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; C., M., etc., Railway v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; St. Louis & San Francisco Ry. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Cincinnati, New Orleans, etc., Ry. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; Texas & Pacific Ry. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940; Interstate Commerce Commission v. Cincinnati Ry. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243; Railroad Commission Cases, 116 U. S. 307, 6 Sup. Ct. 334, 338, 1191, 29 L. Ed. 636; Smyth v. Ames, 169 U. S. 515, 18 Sup. Ct. 418, 42 L. Ed. 819; McChord v. Louisville & Nashville R. R. Co., 183 U. S. 483, 22 Sup. Ct. 165, 46 L. Ed. 289; Alpers v. City of San Francisco (C. C.) 32 Fed. 503; Southern Pacific Co. v. Railroad Commissioners (C. C.) 78 Fed. 236; New Orleans Water Works Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Atlantic Coast Line v. North Carolina Corporation Comm., 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933.

It must be conceded, we think, that the Nebraska State Railway Commission cannot interfere with a power of Congress to regulate interstate commerce nor confiscate the property of appellant by the mere consideration of the question mentioned in the notice of August 17, 1907; but, even if it could, the judiciary cannot control its actions in advance. The great political truth that "the accumulation of all powers legislative, executive, and judiciary, in the same hands whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may be justly pronounced the very definition of tyranny," has always been recognized by those who have struggled for liberty in the years that are gone, and it has always formed one of the great basic principles upon which the national and state governments have been founded. The national Constitution and those of all the states have provided that the powers of government shall be vested in three departments, the executive, the legislative, and the judicial. The fact that the appellant might be subjected to a multiplicity of suits, or that it might suffer irreparable damage when compared with the necessity of maintaining in all its integrity the proposition that the judiciary will not seek to control legislative action in advance, is dwarfed into insignificance.

"The legislative and judicial are co-ordinate departments of the government of equal dignity; each is alike supreme in the exercise of its proper functions and cannot directly or indirectly while acting within the limits of its authority be subjected to the control or supervision of the other without an unwarrantable assumption by that oth-

er of power which by the Constitution is not conferred upon it. The Constitution apportions the powers of government but it does not make any one of the three departments subordinate to another when exercising the trust committed to it. The courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative." Cooley's Constitutional Limitations, 192.

If it is an unwarrantable assumption for the judiciary of the same sovereignty to directly or indirectly control or supervise the legislative power, what can be said of the attempt of the judiciary of a different jurisdiction to control or supervise the legislative power when the orders of said judiciary even when acting within its undoubted jurisdiction are received with hostile resentment? It is claimed, however, that conceding that the fixing of rates as proposed by the State Railway Commission is an act of legislation, and that a court of equity will not seek to control the action of said commission prior to the actual fixing of the rate, still the bill in this case may be maintained for the purpose of perpetually enjoining said commission from giving any notice to appellant of any rates that they may fix. This claim arises from the fact that section 5 of the act of the Nebraska Legislature approved March 27, 1907, provides as follows:

"The said Railway Commission shall fix as soon as practicable thereafter a schedule and classification of rates and charges except joint rates hereinafter provided for for the transportation of freights, passengers, and cars, over the various lines of railroad in this state and to that end the said commission shall give the railroad company or common carriers to be affected thereby ten days notice of the time and place when and where the rates will be fixed and any such railroad company or common carriers shall be entitled to be heard at such times and place to the end that justice may be done; and shall have process to enforce the attendance of witnesses to be served as in civil cases. Said schedule of rates and charges so fixed and prescribed, shall go into effect not less than thirty days nor more than sixty days within the discretion of the commission, after the same have been completed and copies thereof mailed to the railway companies and common carriers affected thereby and any or all rates therein contained shall be and remain in force and effect from and after said time unless modified, annulled or otherwise revised either in whole or in part by the said Railway Commission upon a hearing with respect thereto before said commission or until such rate or rates are finally adjudged to be unreasonable and unjust in a court of competent jurisdiction."

It is argued that if the Railway Commission are permitted to fix the rate and to fix the time within the limits of the law when the same shall go into effect, and shall mail copies of the schedule or schedules of rates so fixed, appellant would be without remedy in a federal court of equity, for the reason that the law fixes the time when the rates shall go into effect, and that after notice has been mailed there would be nothing to enjoin, as the court has no power to restrain the passing of time. We will first consider the objections that stand in the way of granting such relief on the present bill, and then consider whether or not appellant would have a remedy in a federal court of equity after notice of the fixing of the rate had been mailed to it.

The first objection against granting the relief claimed is that prior

to the fixing of the rate this court is bound by a conclusive presumption that the Railway Commission will act justly, fairly, and within the limits of its power.

The second objection to the issue of a perpetual injunction against giving a notice of the fixing of a rate is that courts only concern themselves with real controversies. It certainly cannot be the law that the different railroads in a particular state after a commission has been empowered to fix rates may file a bill in equity in the United States Circuit Court for the proper district and obtain an injunction restraining the commission from putting into effect any schedule of rates which it may thereafter adopt. Take the present case for illustration. Upon what evidence would a decree rest perpetually enjoining the Railway Commission from giving notice to appellant of any rates it may hereafter fix? The answer is plain.

The decree could rest only upon proof that the rates, notice of which is to be restrained, were void for some valid reason, and as the rates are not yet fixed, and the court has no authority to interfere in advance with the fixing thereof, it results that inherently and fundamentally the bill must fail to support the relief now under discussion. But counsel for appellant take a much too narrow view of the powers of a federal court of equity. Those courts are not limited in their powers to the mere restraint of threatened injury but may, in proper cases, where the necessity exists compel action by mandatory injunction.

In the case of In re Lennon, 166 U. S. 556, 17 Sup. Ct. 661, 41 L. Ed. 1110, it is said:

"But it was clearly not beyond the power of a court of equity, which is not always limited to the restraint of a contemplated or threatened action but may even require affirmative action where the circumstances of the case demand it. Robinson v. Lord Byron, 1 Bro. C. C. 588; Hervey v. Smith, 1 Kay & Johns. 389; Beadel v. Perry, L. R. 3 Eq. 465; Whitecar v. Michenor, 37 N. J. Eq. 6; Broome v. New York & New Jersey Telephone Co., 42 N. J. Eq. 141, 7 Atl. 851."

In this very case, if the Railway Commission should proceed and fix a rate which would be unlawful in view of constitutional limitations and give notice thereof to appellant, there would be 30 days at least before the rates would go into effect in which appellant could file a bill in equity in the United States Circuit Court and upon a proper showing obtain a temporary injunction, mandatory in character, compelling the Railway Commission to withdraw and cancel the notice already given until the further order of the court, and if appellant should maintain its bill upon the merits it would be entitled to a perpetual injunction either mandatory or otherwise preventing the enforcement of the rates so established. Not only is this true, but, even after a schedule of rates has gone into effect, appellant, its stockholders, its mortgage bondholders, or any other person or corporation having the proper interest may file a bill in equity to enjoin the enforcement of rates, and the court which first acquires jurisdiction over the matter will hold it to the exclusion of all other courts or officers until the case is finally determined. In the matter of Edward T. Young, Petitioner (opinion by Supreme Court of the Unit-

ed States filed March 23, 1908) 28 Sup. Ct. 441, 52 L. Ed. ——; Thomas F. Hunter, Sheriff, etc., v. James H. Wood (opinion by the Supreme Court of the United States, filed March 23, 1908) 28 Sup. Ct. 472, 52 L. Ed. ——.

It results from the foregoing that the bill was prematurely filed, and the decree of the Circuit Court must be affirmed.

It is so ordered.

SANBORN, Circuit Judge, dissents.