RAILROAD COMMISSIONERS v. RAILROAD COMPANY.

1. This court can make no original decision upon a point not ruled upon below.
2. Whether the statutes gave to the Railroad Commissioners the right to regulate charges to points outside of this state, is a question of jurisdiction which may be raised at any time.
3. The general railroad law of this state was intended to confer upon the Railroad Commissioners the right to regulate freight upon all railroads where any part thereof was within this state, and to all stations on those roads, including stations outside of the state.
4. The power to regulate commerce among the states is given exclusively to Congress; the transportation of freight, or of the subject of commerce, is a constituent part of commerce itself; the transportation of passengers or merchandise through a state, or from one state to another, is commerce among the states, and exclusively within the control of Congress; but, as a general rule, each state may control, as a matter of domestic concern, all the railroads and other things, proper subjects of public control, which are located entirely within the borders of the state, although such regulating control may affect incidentally general inter-state commerce, with which the subject may connect.
5. Transportation of merchandise through a state, or from one state to another, although the carriage may be continuous, is inter-state commerce, and beyond the control of the state, even where Congress has taken no action upon the subject.
6. Any regulation of freights for the transportation from Columbia in this state to points in the State of North Carolina, by the statutes of this state, is beyond the power of the state, because of its being an invasion of the power exclusively vested in Congress by the constitution of the United States.

Before KERSHAW, J., Richland, May, 1884.

The decision of the Circuit judge was as follows:

This is an appeal from the decision of the Railroad Commissioners under the recent amendments of the general railroad law, heard May 24, 1884. There are serious questions as to the jurisdiction of the judge to whom is committed the hearing of these appeals which suggest themselves, but as no objection has been made to the hearing upon that ground, I will proceed to determine the matters submitted upon their merits. This decision is required to be filed within ten days after the hearing; and as the

cases referred to and the statutes to be considered are so numerous that they could scarcely all of them be carefully read in the time at my disposal, but little more than a bare decision can be expected, without the support of that mature consideration which questions of such magnitude and importance ought to receive.

This first appeal is from the decision of the Commissioners against a charge made by appellants in their rates of freight on merchandise shipped by their road from Columbia, South Carolina, to various points in North Carolina on the Chester & Lenoir Railroad, being one of the roads consolidated with and controlled by the appellants' company. Several grounds are urged by the appellants against the authority of the Commissioners to require them to amend their rates in conformity with the decision of the Commissioners. I shall notice, first, the objection that this decision is an invasion of the domain of inter-state commerce, a subject exclusively within the control of Congress, under the constitution of the United States, article 1, § 8.

As this is a question affecting the constitution of the United States, if we can find that it has been settled by the decisions of the federal courts, they would be of controlling authority and binding upon the courts of this state. It has been established by decisions in those courts that "the transportation of merchandise from a place in one state to a place in another is commerce among the states," and "to fix or limit the charges for such transportation is to regulate commerce," and "a statute fixing or limiting such charges for transportation from places in one state to places in another state is a regulation of commerce among the states," and "the power to regulate such commerce is vested by the constitution in Congress," and "this power of Congress is exclusive, at least in all cases where the subjects over which the power is exercised are in their nature material, or admit of one uniform system or plan of regulation." This is an extract from the summary of what is laid down as settled in the federal courts, by McCrary, J., in one of the most recent cases on the subject, *Kœiser* v. *Illinois Central R. R. Co.*, 18 *Fed. Rep.*, 153. To sustain this summary, he cites *Crandall* v. *Nevada*, 6 *Wall.*, 35; *Passenger Cases*, 7 *How.*, 283; *Gibbons* v. *Ogden*, 9 *Wheat.*, 1; *Case of State Freight Tax*, 15 *Wall.*, 232; *Welton* v. *Missouri*,

91 *U. S.*, 279; *Hall* v. *DeCuir*, 95 *U. S.*, 497; *Railroad Co.* v. *Husen, Id.*, 469; *Pensacola Tel. Co.* v. *W. U. Tel. Co.*, 96 *U. S.*, 9, &c.

In *Hall* v. *DeCuir*, Chief Justice Waite says: "There can be no doubt but that *exclusive* power has been conferred upon Congress in respect to the regulation of commerce among the several states." In *Railroad Co.* v. *Husen*, Mr. Justice Strong, delivering the opinion of the court, says: "Whatever may be the power of a state over commerce that is completely internal, it can no more prohibit or regulate that which is inter-state than it can that which is with foreign nations. Power over one is given by the constitution of the United States to Congress, in the same words in which it is given over the other, and in both cases it is necessarily exclusive." In the same opinion it is said: "Transportation is essential to commerce, or rather it is commerce itself; and every obstacle to it or burden laid upon it by legislative authority is regulation." In the case of the *State Freight Tax*, it was held that "the transportation of freights, or the subject of commerce, is a constituent part of commerce itself. * * * That transportation of passengers or merchandise through a state, or from one state to another, is commerce among the states, and exclusively within the regulating control of Congress."

If these propositions of law be correct, it follows that any regulation of freights for the transportation of merchandise from Columbia in this state to points in the State of North Carolina by the statutes of this state, would be beyond the power of the state, because of its being an invasion of the powers exclusively vested in Congress by the constitution of the United States, and hence would not be binding upon the appellants in this case. As these decisions have been pronounced by the highest judicial authority of the United States, in courts of the last resort, and affect a question of the limits imposed upon state legislation by the constitution of the United States, they are binding upon me.

But does the statute under which the Commissioners are acting here undertake to regulate or limit the rates of freight beyond the limits of the state? I think it does not. It is entitled "An act to provide a general railroad law for the management and regulation of railroads *in this state*," &c. [Here the learned judge

quotes the language of the General Statutes, as found in sections 1440, 1441, 1442, 1443, and 1446.] I can find nothing in the sections quoted (which are those affecting the subject now under consideration) which necessarily requires to be construed as an attempt on the part of the state to do more than establish regulations of commerce by railroads within the limits of this state, which it has the clear and unquestioned right to do. I therefore hold that the act does not authorize the Commissioners to regulate freights upon merchandise committed to railroads for transportation from a point in this state to a point beyond the limits of the state.

The argument of the learned attorney general to the contrary of this is based to a large extent upon the similarity of these provisions to those in the act of Illinois on the same subject, and the construction of that act by the courts of that state. But it is quite as fair to assume that the legislature of this state was moved to employ the language they did by a knowledge of the cases in the United States Court, which held that they had no power to legislate upon this subject so as to affect commerce beyond the limits of this state.

The case of *Peik* v. *Chicago & N. W. Ry. Co.*, 94 *U. S.*, 164, also relied upon by the attorney general, is a very peculiar case, and can hardly be authority upon the general subject, because of the very unusual circumstances there existing. The decision is placed distinctly upon the peculiar contractual effect of the consolidated charters, and so far as the feature of inter-state commerce is concerned, it is considered by Chief Justice Waite that the regulation in question was one confined to "state commerce, or such inter-state commerce as directly affects the people." He says: "Until Congress acts in reference to the relation of this company to inter-state commerce, it is certainly within the power of Wisconsin to regulate its fares, &c., *so far as they are of domestic concern.*"

In relation to this case, I will add a few remarks from the decision of Judge Hill, in the Circuit Court, Southern District of Mississippi, in the case of the *Illinois Central Railroad Company* v. *John M. Stone and others, Commissioners.* Speaking of *Peik* v. *Chicago,* he says: "The last case, at first view, would seem to

sustain the position assumed by counsel. But it cannot fairly be supposed that the court intended to declare that inter-state commerce might be regulated by the states until Congress chose to regulate it, for the same court has often said that inaction by Congress in this respect is no warrant for state interference. * * * It was a peculiar case. A corporation of Illinois was, by the consent of that state, merged into a corporation of the State of Wisconsin, and in express terms was thereafter to be governed by the laws of Wisconsin, and the constitution of Wisconsin authorized the legislation complained of, and the corporation had become a domestic corporation of Wisconsin, although its line of road extended into the State of Illinois."

The "*Granger cases*" are also relied on by the counsel for the Commissioners, but they do not appear to have been considered as settling the doctrines which they are cited to sustain. In a very instructive case in the Circuit Court for the Middle District of Tennessee, those cases have been commented upon by Judge Hammond at some length and with much force. He concludes thus: "The decisions amount, we think, only to this, where a warehouseman or common carrier is engaged in the storage of goods or their carriage *within a state, and exclusively within it,* the rates of charges for such business are subject to legislative control by the state, and the fact that such legislation may *indirectly* and *remotely affect* commerce between the states, does not invalidate it." That case was heard before Judges Baxter, Hammond, and Key, and decides *inter alia* that the power of the states to regulate railroad rates by such direct action, is limited to domestic transportation, "which means that carried on exclusively within the boundaries of the state."

Possibly a state may bind corporations engaged in inter-state commerce to schedules of rates agreed upon by them, but this is binding only by force of the contract of the carrier so bound. *Louisville & N. R. R. Co.* v. *Railroad Commissioners of Tennessee*, 19 *Fed. Rep.*, 679.

That such a restriction upon the states in regard to commerce among the states is reasonable and necessary, is further made apparent by considering that if the one state has a right to prescribe the rate of freight at one end of the line, the other would

have the same right, on its side, to prescribe another and a different rate for the same transportation, and conflicts most absurd and disastrous to commerce might ensue in consequence. This feature is referred to and pointed out in many of the cases as vindicating the necessity of the restriction, and that it must be, in its nature, exclusive of state legislation.

Another argument insisted on by the appellant is that the charter of this railroad is a contract, and that by the terms of the charter the railroad is allowed to carry freights at a rate not exceeding fifty cents per hundred pounds, and twenty cents per cubic foot, which rates are not exceeded in the charges sought now to be reduced by the Commissioners. Nor do they exceed the rates allowed by the charter of the Kings Mountain Railroad Company. This company was protected as to the 41st section of the act of 1841, subjecting all chartered companies to legislative control, by the 32d section of its charter, which expressly declares that it shall in no wise be subject to its provisions (11 *Stat.*, 408). The act to produce conformity in the charters granted to the Charlotte & South Carolina Railroad Company by the States of North and South Carolina, declares that the charter theretofore granted to said company "shall continue of force, except in so far as it may be repugnant to the provisions of this act" (11 *Stat.*, 542, § 33). By section 30 of the same act it is declared that "the said company shall be entitled only to such powers and privileges as shall be granted to it by the legislature incorporating it,     *     *     *     and shall be subject to all the restrictions and liabilities which may be imposed on it by either of the legislatures by the act of incorporation, so that its powers and disabilities may be similar in each of the states, unless the provisions of this section be repugnant to the clause of the former charter exempting the company from the operations of the act of 1841." I do not discover any such repugnancy in the act. But it may be that some such repugnancy may have arisen under this (the 30th) section in consequence of the provisions of the act of North Carolina in regard to this company. That act is not before me, nor at present accessible.

It is insisted, however, by the counsel for the railroad that the effect of section 33 is to continue in force the chartered exemp-

tion from the act of 1841, section 41.    By the act consolidating the Charlotte & South Carolina Railroad Company with the Columbia & Augusta Railroad Company, creating the Charlotte, Columbia & Augusta Railroad Company, it is declared that said company shall possess all the rights, powers, privileges, *immunities*, and franchises conferred upon said companies by the several acts heretofore passed and now of force incorporating said companies, and amending the charters thereof.    14 *Stat.*, 232.

It is further insisted that these immunities have never been waived by the company or withdrawn by their acceptance of any amendment or modification of the charter, and therefore it is claimed that the legislature can make no law interfering with rates of freight charged by said company so long as they are not in excess of the limit fixed in the charter.    I do not agree with this proposition.    If the company had been authorized to transport passengers and property, and to receive compensation therefor without any restrictions as to amount, the company would have been confined in their charges to reasonable rates, and unless restrained by the charter, the legislature would have had power to declare what were reasonable rates.

In this charter there was a provision which qualified the general power conferred to receive compensation and establish rates of freights and fares, and declared that these should not exceed the limit prescribed.    In other words, instead of a general grant of the right to make such charges without limit, and afterwards by another act declaring what should be a reasonable rate, the reasonable rate is fixed by the charter.    If a general grant in the charter of the right to make these charges without any specified limit, leaves the state at liberty to interfere and say what shall be the rate, how can the state powers over the subject be less where the grant of the power is not unlimited, but qualified and limited ?    If the latter is to be construed a contract limiting the power of the state, why not the former ?    Yet it is well established that the legislature may establish reasonable limits to such charges when there is a general grant of the power, and upon like principles I am of the opinion that when at the time a maximum is fixed by the charter, which is then deemed reasonable, but which by the change of circumstances becomes unreasonable

subsequently, the state may prescribe another and different maximum in order to conform to the progress of commerce and the public necessities. The object of the proviso in the charter in relation to charges for freight and passengers was not to control or limit the power of the legislature, but to limit the company. The principle is that "a state may limit the amount of charges by railroad companies for fare or freights, unless restrained by some contract in the charter," and I find no such contract here. The authorities on this subject are all collected in the case of *Ruggles* v. *Illinois*, 108 *U. S.*, 531, to which I refer.

There are other objections made by the company to the exercise of this power of control by the state of the railroads as violating the state constitution in several particulars. These the limited time at my disposal will not allow me to discuss severally, and I must content myself by saying that in my opinion they are probably answered by what has already been said, so far as the present question is concerned. If they have not, they would not affect the result of this appeal.

It is therefore ordered and adjudged that the finding by the Railroad Commissioners in the matter of the items of charges by the said railroad company for the transportation of fertilizers from Columbia, S. C., to the stations on the Chester & Lenoir Railroad, bearing date the 10th day of April, 1884, from which this appeal was taken, be reversed, and the said appeal sustained.

From this decision the Railroad Commissioners appealed, upon the grounds stated in the opinion of this court.

*The Attorney General*, for appellants, contended that the Railroad Commissioners were required by law to supervise freight charges on railroads to points without the state and to require the railroad companies to make their charges conform to the law, *citing* the several statutes of this state since 1878, and also the case of *People* v. *Wabash, St. Louis & Pacific R. R. Co.*, 104 *Ill.*, 476, construing similar legislation in Illinois. He further contended that such legislation was not in conflict with the constitution of the United States, *citing* 6 *Cr.*, 87; 12 *Wheat.*, 270; 99 *U. S.*, 718; 94 *Id.*, 114, 155, 175, 179, 180; 95 *Id.*, 497;

104 *Ill.*, 476. In support of the position that respondent is not protected by its charter from this legislation, the attorney general *cited* the statutes of incorporation and amendments. *Gen. Stat.*, §§ 1361, 1416; 11 *Stat.*, 168, § 41; 95 *U. S.*, 318; 108 *Id.*, 531.

Mr. *J. H. Rion*, contra, *cited, inter alia*, 105 *U. S.*, 464; 95 *Id.*, 469, 487; 94 *Id.*, 163; 18 *Fed. Rep.*, 12, 154; 20 *Id.*, 470; 19 *Id.*, 680; 45 *Iowa*, 338; 6 *Am. and Eng. R. R. Cas.*, 305; *Rorer Inter-State Laws*, 311–313; *Pom. Inter-State Com.*, 382, 383, 387, 391; *U. S. Rev. Stat.*, § 5258, and the preamble to the act contained in that section, as originally passed.

April 28, 1885. The opinion of the court was delivered by MR. JUSTICE McGOWAN. In obedience to the provisions of the general railroad law of the state from section 1413 to 1561, General Statutes, the president of "The Charlotte, Columbia & Augusta Railroad Company" submitted to the Railroad Commissioners a freight tariff, in which was set down rates on the transportation of fertilizers between Columbia, South Carolina, and Crowder's Creek, and other stations in the State of North Carolina, on the Chester & Lenoir Railroad, which was operated by the defendant corporation. The Commissioners objected to the freights for transporting the fertilizers aforesaid, and, after giving opportunity as required for the defendant corporation to be heard, rendered the following decision: "That the items of charges in the said schedule hereinbefore set forth are in violation of the law (General Statutes, § 1442) forbidding any railroad company to charge or collect for the transportation of freight over its railroad, the branches thereof, and any road or roads which said company has the right, license, or permission to use, operate, or control, wholly, or in part, within this state, a greater amount than shall at the same time be charged or collected by it for the transportation of a like quantity of freight of the same class transported over any portion of said road of equal distance, and are in excess of the rates fixed and approved by the said Railroad Commissioners on January 18, 1884, a copy of which

is herewith filed as exhibit 'B,' and that notice of the said proposed changes in the schedule so adopted and approved was not given thirty days before the day it was to go into effect, such proposed changes not having been agreed to by the said Railroad Commissioners, as required by the General Statutes, section 1451, a."

From this decision the defendant corporation appealed to Judge Kershaw, "resident judge" of the Fifth Circuit, who, after hearing argument, held that the general railroad act of this state does not authorize the Railroad Commissioners to regulate freights upon merchandise committed to railroads for transportation from a point in this state to a point beyond the limits of the state. And also that if it did so, "such attempted regulation would be beyond the power of the state, because of its being an invasion of the power exclusively vested in Congress by the constitution of the United States," and dismissed the appeal.

From this judgment the Commissioners appeal to this court upon the following exceptions :

I. "Because his honor held 'That any regulation of freights for the transportation of merchandise from Columbia, in this state, to points in the State of North Carolina, by the statute of this state, would be beyond the power of the state, because of its being an invasion of the power exclusively vested in Congress by the constitution of the United States, and hence would not be binding upon the appellants (the C., C. & A. R. R. Company) in this case.' Whereas, it is respectfully submitted, his honor should have held that the general railroad act (under the provisions of which the finding of the Railroad Commissioners appealed from was made) operates upon every company in this state engaged in the transportation of property by railroad, and extends and applies to every railroad which said company has a right, license, or permission to use, operate, or control. That therefore the regulation of such company is a matter of domestic concern. It is employed in state as well as inter-state commerce, and until Congress acts, the state must be permitted to adopt such rules and regulations as may be necessary for the promotion of the general welfare of the people within its own jurisdiction,

even though in so doing those without may be incidentally affected. (*Chicago R. R. Co.* v. *Iowa*, 94 *U. S.*, 163.)

II. "Because his honor having found that the Chester & Lenoir Railroad is one of the roads consolidated under an act of the State of South Carolina with and controlled by the appellant, a corporation of said state, should have held that 'thus the State of South Carolina is permitted to legislate for the consolidated company in this state precisely the same as it would for its own original companies if no consolidation had taken place,' and that therefore the law of South Carolina regulating the charges of the C., C. & A. Railroad for transportation undertaken by it to points upon the Chester & Lenoir Railroad applies to state commerce or such inter-state commerce as directly affects the people of South Carolina; until Congress acts in reference to the relations of this company to inter-state commerce, it is certainly within the powers of South Carolina to regulate its fares, &c., so far as they are of domestic concern. With the people of South Carolina this company has domestic relations. Incidentally these may reach beyond the state, but certainly until Congress undertakes to legislate for those who are without the state, South Carolina may provide for those within, even though it may indirectly affect those without. (*Peik* v. *Chicago Railroad Co.*, 94 *U. S.*, 177.)

III. "Because, it is respectfully submitted, his honor erred in following the decisions of some of the Circuit Courts of the United States, inconsistent with the decisions of the Supreme Court of the United States in relation to the question involved in the appeal of the right of the state to regulate its railroad companies.

IV. "Because his honor held that the 'general railroad act does not authorize the Railroad Commissioners to regulate freights upon merchandise committed to railroads for transportation from a point in this state to a point beyond the limits of the state.' Whereas, it is respectfully submitted, this point was not made in the grounds of appeal from the finding of the Railroad Commissioners, and his honor erred in deciding it; because sections 1451 *a* and 1451 *b* of the General Statutes expressly require all railroad companies in this state to submit to the Railroad Commis-

sioners for their scrutiny and revision copies of the schedules of all through rates and joint rates with other roads as soon as adopted; and the said Railroad Commissioners are required to examine the same and determine whether they are in any particular a violation of any of the provisions of the law intended to prevent discrimination, and to secure to all persons just and reasonable rates of charges for transportation of passengers or freight of any description; and it is from the findings of the said Commissioners under these sections that the appeal heard by his honor is taken; but his honor, in quoting all the sections of the general railroad act which he considers affect the subject under consideration, omits to allude to these sections. And his honor also omits to quote section 1445, General Statutes, which declares that 'each and all of the provisions of the act shall apply to all property, and the receiving, delivering, loading, unloading, storage, or carriage of the same on one actually or substantially continuous carriage, or as part of such continuous carriage, * * * and the compensation thereof, whether such property be carried wholly on one railroad or partly on several railroads; and whether such services are performed or compensation paid by or to one person alone, or in connection with another or other persons.

V. "Because, it is respectfully submitted, his honor erred in not deciding as requested to do by the respondents, that the state has the right to regulate the freights to be charged by all companies in this state, chartered by this state or consolidated under the laws of this state with companies chartered by other states, notwithstanding any exemption from legislative control, which might be claimed by such companies under the original charters; such consolidation having worked a dissolution of the original charters, and such exemption from legislative control having ceased when amendments to the original charters were made and accepted. *Shields* v. *Ohio*, 95 *U. S.*, 319; *Hoge* v. *R. R. Co.*, 99 *U. S.*, 348."

As to the fifth exception for not deciding as to the general right of the state to supervise and regulate freights on railroads within the state, we cannot make an original decision. We are limited to the correction of errors, and when there has been no

ruling below there can be no question of error before us. Besides, we may say that the judge did substantially decide the point made, and from that decision there was no appeal. The judge held as follows: "It is further insisted that these immunities (exemption from legislation under the 41st section of the act of 1841) have never been waived by the company or withdrawn by their acceptance of any amendment or modification of the charter, and therefore it is claimed that the legislature can make no law interfering with rates of freight charged by said company so long as they are not in excess of the limit fixed in the charter. I do not agree with this proposition. If the company had been authorized to transport passengers and property, and to receive compensation therefor without any restriction as to amount, the company would have been confined in their charges to reasonable rates, and unless restricted by the charter the legislature would have had power to declare what were reasonable rates. * * * The object of the proviso in the charter in relation to charges for freight and passengers was not to control or limit the power of the legislature, but to limit the company. The principle is that a state may limit the amount of charges by railroad companies for fare or freights, unless restrained by some contract in the charter, and I find no such contract here. The authorities are all collected in the case of *Ruggles* v. *Illinois*, 108 *U. S.*, 531," &c.

The fourth exception complains that the judge decided that the railroad law "does not authorize the Commissioners to regulate freights upon merchandise committed to railroads for transportation from a point in this state to a point beyond the limits of the state, where the point was not made in the grounds of appeal from the finding of the Railroad Commissioners, and therefore it was error." Whether the general railroad law gave the Railroad Commissioners the right which they exercised, was a question of jurisdiction which could be raised at any time whether made or not by the parties. See *Waller* v. *Creswell*, 4 *S. C.*, 353.

Did the Circuit judge err in holding that the law under which the Commissioners acted does not undertake to regulate the rates of freight beyond the limits of the state, and that in attempting to do so the Commissioners acted beyond the authority conferred

upon them ? The question involves the construction of the railroad law of the state, and especially as to the powers and duties imposed upon the Commissioners. The railroad law is composed of many sections which have lately been much amended, and it could hardly be expected that so many complex provisions made at different times upon a subject so difficult should be entirely consistent with each other in every particular. But taking all the different parts together, and considering them as a whole with reference to the manifest object and intent, we cannot doubt that the jurisdiction exercised was given and intended to be given to the Railroad Commissioners.

It is of course assumed in the outset that the general assembly of the state legislates only for the territory embraced within the boundaries of the state, and that generally its acts have not the force of law beyond those boundaries. It is true, as stated, that the railroad law is properly entitled "an act to provide a general railroad law for the management and regulation of railroads in this state." It is also true that several of the sections speak expressly of railroads in this state; but it must be observed that neither the title of the act nor any of the sections limit the provisions of the law to railroads exclusively within this state—having both termini and doing all its business within this state. To give the law this construction would exclude entirely from its operation all railroads which happen to have a terminus, or operate another road which has a terminus, beyond the limits of the state. This would defeat the very object of the act and make discriminations instead of preventing them, and we are sure was not the intention of the legislature. It is not to be doubted that the legislature intended justice and equity, and that the remedies sought to be enforced by the law were as much applicable to railroads running through the state and across its border as to those located exclusively within the state. We do not see that a railroad chartered by the state, and running for a distance on the soil of the state, is any the less a "railroad in the state," because it may have a terminus in another state.

The correctness of this view is demonstrated by the provisions of the last important amendment to the law, that of 1883 (18 *Stat.*, 487), which, among other things, enacts "that it shall be

unlawful for any such person, &c., to charge, collect, or receive at any point upon its railroad a higher rate of toll," &c.; and then provides "that the provisions of this section and the two preceding sections shall extend and apply to any railroad, the branches, and any road or roads which any such person or persons so engaged as aforesaid, has the right, license, or permission to use, operate, or control, wholly, or in part, within this state." These two provisions, taken together, constitute an express authority and direction that the requirements of the law "should extend and apply" to railroads "*in part within this state*" and at *any point* on such road, which necessarily includes stations *without* as well as those *within* the state. See the opinion of the Supreme Court of Illinois in the case of *The People of the State of Illinois* v. *The Wabash, St. Louis & Pacific Ry. Co.*, 104 *Ill.*, 476.

It is suggested, however, that while it may be true that the provisions of the law do apply, and were intended to apply, to a railroad within this state which happens to have a terminus beyond its limits, yet it was intended to apply only to that portion of the business of the road, which might be done between stations on the road located in the state. There is no such limit or qualification in the provisions of the act. Some of the states under similar circumstances (for example, Georgia) have inserted such limitation, but our act has none. The provisions are sweeping and general—"all through rates and joint rates with other roads," &c. It seems to us that the general embraces every particular—that the whole includes all its parts. We cannot assume that the legislature made general provisions without limitation or qualification, and appointed Commissioners to enforce them, with the unexpressed reservation that the Commissioners themselves should make a distinction in the duties imposed—enforcing one class and omitting to enforce another, only for the reason that in their judgment the latter were unconstitutional and void.

The object of the law manifestly was to secure a uniform system of rates to be charged by companies doing business in the state for all transportation undertaken by them, and this object would certainly not be promoted if the relief proposed did not extend to

any part of the transportation, not even that within the state, of all property destined for delivery *beyond* the limits of the state. We do not think that the words "within this state," as used in the railroad act, can by any fair construction be held to limit the provisions of the act against discriminations to charges for transportation *wholly within the state*, or that the Commissioners could have shown a warrant in the law for refusing to enforce its provisions as to articles transported from the state and *delivered beyond* its limits.

Assuming, then, that the Railroad Commissioners did not transcend their jurisdiction; that some of the provisions of the railroad law do apply to transportation undertaken and conducted by companies doing business in South Carolina, even when the place of delivery may be beyond the limits of the state, then the question arises whether it was beyond the power of the state to insert those provisions in the law. Judge Kershaw held that any regulation of freights for the transportation of merchandise from Columbia, in this state, to points in the State of North Carolina by the statutes of this state, would be beyond the power of the state, because of their being an invasion of the power to regulate commerce among the states, which is vested exclusively in Congress by the constitution of the United States. Was this error?

The question is one of importance, and in some aspects not free from difficulty arising not from the provisions of the constitution itself, which is short and plain, but principally from a seeming conflict in the decided cases as to what is a regulation of commerce between the states, and connected therewith as to the matters upon which a state may act, although inter-state commerce may be thereby incidentally affected. Section 8, art. I., of the constitution of the United States declares that "Congress shall have power to regulate commerce with foreign nations and among the states." In considering the proper interpretation of this provision, we may, for the sake of brevity, assume several points to be settled beyond controversy. We may take as settled that the power to regulate commerce among the states is given exclusively to Congress. In *The City of New York* v. *Miln*, 11 *Peters*, 102, Mr. Justice Story said: "The power given to

Congress to regulate commerce with foreign nations and among the states has been exclusive from the nature and objects of the power and the necessary implications growing out of its exercise. Full power to regulate a particular subject implies the whole power and leaves no residuum ; and the grant of the whole to one is incompatible with a grant to another of a part," &c.

In *Groves* v. *Slaughter*, 15 *Peters*, 449, Mr. Justice Baldwin said : "That the power of Congress to regulate commerce among the states is exclusive of any interference by the states, has been, in my opinion, conclusively settled by the solemn opinions of this court in *Gibbons* v. *Ogden*, 9 *Wheat.*, 186, and in *Brown* v. *Maryland*, 12 *Wheat.*, 438. If these decisions are not to be taken as the established construction of this clause of the constitution, I know of none which are not yet open to doubt ; nor can there be any adjudication of this court, which must be considered as authoritative upon any question, if these are not to be so on this," &c. These positive judicial declarations from the highest court in the United States must suffice, without attempting to cite the multitude of cases upon the exact point.

It may be taken as settled that "the transportation of freight or of the subject of commerce is a constituent part of commerce itself; and that the transportation of passengers or merchandise through a state, or from one state to another, is commerce among the states, and exclusively within the control of Congress." (See the case of the *State Freight Tax*, 15 *Wall.*, 281.) "Whenever the subjects in regard to which a power to regulate commerce is asserted are in their nature national, or admit of one uniform system or plan of regulation, they are exclusively within the regulating control of Congress."

It may, as we think, also be taken as settled that, as a general rule, each state may control, as a matter of "domestic concern," all the railroads and other things—proper subjects of public control—which are located entirely within the borders of the state, although such regulating control may affect incidentally general inter-state commerce, with which the subject may connect. This proposition is well illustrated by the somewhat famous case of *Munn* v. *Illinois*, 94 *U. S.*, 135. In that case an immense grain elevator or warehouse was erected to facilitate the storing

and shipment of grain at the city of Chicago, between the railroad and the lake, and although located within the State of Illinois, it stood in the very gateway of commerce, affecting eight or ten states.    The State of Illinois passed a law to regulate public warehouses, inspection charges, &c., and the Supreme Court of the United States sustained the constitutionality of the law.

In delivering the judgment of the court, Chief Justice Waite said: "It was very properly said in the case of the '*State Tax on Railway Gross Receipts*' (15 *Wall.*, 293) that it is not every thing that affects commerce that amounts to a regulation of it within the meaning of the constitution.    The warehouses of these plaintiffs in error are situated, and their business carried on exclusively, within the limits of the State of Illinois.    They are used as instruments by those engaged in state as well as those engaged in inter-state commerce, but they are no more necessarily a part of commerce itself than the dray or the cart by which, but for them, grain would be transported from one railroad station to another.    Incidentally they may become connected with inter-state commerce, but not necessarily so.    Their regulation is a thing of domestic concern, and, certainly until Congress acts in reference to their inter-state relations, the state may exercise all the powers of government on them, even though in so doing it may indirectly operate upon commerce outside of its immediate jurisdiction," &c.

It seems, however, that there are some exceptions to this rule—cases in which it has been held that a state may not make such regulations, even where the subject is exclusively within the limits of the state and in that sense might be considered a matter of "domestic concern."    The case of *Hall* v. *DeCuir* (95 *U. S.*, 497) is one of them.    In that case the State of Louisiana passed a law, requiring those engaged in the transportation of passengers to give all persons travelling in that state equal rights and privileges, without distinction of race or color; and the Supreme Court held that the act was unconstitutional, as an attempted regulation of inter-state commerce.    Chief Justice Waite, after referring to what had been held in *Munn* v. *Illinois, supra,* said: "The line which separates the powers of the states from this exclusive power of Congress is not always distinctly marked, and

oftentimes it is not easy to determine on which side a particular case belongs. Judges not unfrequently differ in their reasons for a decision in which they concur. Under such circumstances, it would be a useless task to undertake to fix an arbitrary rule by which the line may in all cases be located. It is far better to leave a matter of such delicacy to be settled in each case upon a view of the particular rights involved. But we think it may safely be said that state legislation, which seeks to impose a direct burden upon inter-state commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress. The statute now under consideration, in our opinion, occupies that position. It does not act upon the business through the local instruments to be employed after coming within the state, but directly upon the business as it comes into the state from without or goes out from within," &c. And see the judgment of Chief Justice Marshall, in the famous case of *Gibbons* v. *Ogden* (9 *Wheat.*, 1), as to the constitutionality of a law of New York granting to Livingston & Fulton the exclusive navigation of all the waters within the jurisdiction of that state.

But in the view that the doctrine of *Munn* v. *Illinois* is general and extends to railroads; that a state may exercise regulating control within her borders, although such action may incidentally affect commerce beyond, it is insisted that the converse of that proposition should hold good, viz., that the state may not exercise such regulating control where it reaches beyond the state line, and in the sense contemplated cannot be fairly said to be "a matter of domestic concern," and its effect upon commerce is not merely incidental, but direct. Seeing that the most difficult application of a rule, resting upon what may be a matter of "domestic concern," must be in reference to through transportation on railroads which cross the borders of one state into another, the embarrassment arising from the carriage being continuous, part in one state and part in another, and therefore part domestic and part foreign—we have looked carefully through the cases to see whether the courts have held that in such case a state may control the freights on that part of the transportation which lies beyond the state line as an incident or integral part of that which is within, and may be said to be "domestic." We have found

several cases which hold, more or less distinctly, that there is not such identity in the different parts of a continuous carriage from one state into another as to make them necessarily subject to the same control in regard to the question as to what is and what is not a regulation of commerce in the sense of the constitution. We will select only the following cases:

Case of the *State Freight Tax*, 15 *Wall.*, 277.   In this case, in delivering the judgment of the court, Mr. Justice Strong said: "The state may tax its internal commerce, but if an act to tax inter-state or foreign commerce is unconstitutional, it is not cured by including in its provisions subjects within the domain of the state.   Nor is a rule prescribed for carriage of goods through, out of, or into a state any the less a regulation of transportation because the same rule may be applied to carriage which is wholly internal.   Doubtless a state may regulate its internal commerce as it pleases.   If a state chooses to exact conditions for allowing the passage or carriage of persons or freight through it into another state, the nature of the exaction is not changed by adding to it similar conditions for allowing transportation wholly within the state."   This case has often been cited with approval by the Supreme Court of the United States, without an intimation of dissent from its rulings.[1]   Very recently several of the Circuit Courts of the United States have applied its principles and doctrines to cases precisely similar to the one before us.   It may be true that these cases have not yet reached the Supreme Court of the United States and been finally decided there, but we think they are commended to notice as the last judicial utterances upon the subject, and for the learning and ability displayed.

In *Pacific Coast Steamship Co.* v. *Board of Railroad Commissioners*, *Fed. Rep.* (November, 1883), Judge Field held that "the State Board of Railroad Commissioners has no power to regulate or interfere with the transport of persons or merchandise by a steamship company, between ports within the state, if they be in transit to or from other states, or when in navigating

---

[1] See opinion of Supreme Court of the United States, filed April 13, 1885, *Gloucester Ferry Company* v. *Pennsylvania*, 114 *U. S.*, 196.—REPORTER.

the ocean the vessel goes beyond a marine league from the shore. This power has been conferred upon Congress and is exclusive," &c.

In *Kœisler* v. *Illinois Cent. R. R. Co.* (Circuit Court, Iowa), *Fed. Rep.* (November, 1883), Judge McCrary held that "this power of Congress is exclusive. It follows that the act of the General Assembly of Iowa providing for a tariff of maximum charges for the transportation of freight and passengers by railroads, in so far as it relates to through shipments over inter-state lines, is unconstitutional." (See numerous authorities quoted.)

In *Illinois Cent. R. R. Co.* v. *Stone et al., Fed. Rep.* (July 8, 1884), Judge Hill held that "a state legislative act to fix and regulate the charges of transportation of any road, save such as is strictly and entirely within the borders of that state, is a law to regulate commerce and against the constitution of the United States." This case, as stated by the Circuit judge, explains that of *Peik* v. *Chicago & N. W. Ry. Co.*, 94 *U. S.*, 175.

In *Louisville & N. R. Co.* v. *Railroad Commissioners of Tennessee, Fed. Rep.* (February 29, 1884), the court held, among other things, that "the power of the states to regulate railroad rates by direct action is limited to domestic transportation, which means that carried on exclusively within the boundaries of a state, and transportation can be domestic only when it begins and ends within those boundaries; and this definition cannot, for the purpose of enlarging state authority, be held to include so much of a transportation on a continuous shipment between two or more states as will cover the distance travelled within the limits of any one of those states; for this construction would utterly destroy the exclusive power of Congress over the inter-state transportation, abrogate the constitutional provision, and enable the states to restrict, obstruct, or impair that freedom of commerce between the states which it was the object of the provision to permanently secure. It can only include the transportation carried on upon roads lying wholly within the state, or else it may be to shipments beginning and ending in the state, without reference to the character of the road in that regard. This is the utmost reach of the state power," &c.

There is one case which seems to be in conflict with this array

of authority. It is one of those generally known as "the Granger Cases," *Peik* v. *Chicago & N. W. Ry. Co.*, 94 *U. S.*, 178. As the Circuit judge states, this seems to be "a very peculiar case." As we understand it, the Northwestern Railway Company, a corporation of the State of Illinois, was consolidated with certain roads in the State of Wisconsin, upon certain stipulations that the Wisconsin law should govern the consolidated company; that is, making the Illinois company, so far as it could be done, a company of the State of Wisconsin. This state (Wisconsin) passed a law to regulate rates on her railroads. The creditors of the Illinois company challenged the right of the State of Wisconsin to regulate fares in Illinois, and it was held that as they had chosen to come in under the Wisconsin law they "must take the consequences." This was clearly the main question in the case. It is true that, among others, the point was made, that the Wisconsin act, so far as it related to the Illinois portion of the consolidated road, was an effort to regulate commerce among the states, but the point seems not to have been fully argued.

In delivering the judgment of the court, Chief Justice Waite said: "As to the effect of the statute as a regulation of internal commerce, the law is confined to state commerce, or such inter-state commerce as directly affects the people of Wisconsin. Until Congress acts in reference to the relations of this company to inter-state commerce, it is certainly within the power of Wisconsin to regulate its fares, &c:, so far as they are of domestic concern. With the people of Wisconsin this company has domestic relations. Incidentally, these may reach beyond the state, but certainly until Congress undertakes to legislate for those who are without the state, Wisconsin may provide for those within, even though it may incidentally affect those without," &c.

It seems that for the purposes of government, the Illinois road was considered as pushed back into the State of Wisconsin, and stood precisely as if it were within the physical boundaries of that state, and in this light, fares on the Illinois road were matter of "domestic concern" to Wisconsin. This would seem to be indicated by the phrase "domestic concern." When that expression was first used in the case of *Munn* v. *Illinois, supra*, in reference to the grain elevator at Chicago, it was plainly to convey the idea

16

of being within, as contradistinguished from that of being without the state. To use the expression in any wider sense, as affording the test of state jurisdiction, would, it seems to us, throw open the whole subject, and leave it to the legislature to decide in each case as to what is, and what is not, sufficient to constitute a matter of "domestic concern" to the state. But if we are mistaken in our understanding of this case, we cannot think that it overthrows the weight of authority which holds "that transportation of passengers or merchandise through a state, or from one state to another, is inter-state commerce."

We think we are not allowed to give controlling influence to the fact that Congress has not exercised the jurisdiction conferred upon it. In several of the cases allusion is made to the fact that "Congress has not acted," and that induced the inquiry whether there was any law upon the subject; but we find none. In a certain class of cases, local in character, such as harbors, bays, &c., state legislation is permitted until Congress acts, and nothing more. As we have shown, the jurisdiction is exclusive, and that would seem to be inconsistent with the view that non-action on the part of Congress confers it on the states. As was said in the case of *Mobile* v. *Kimball*, 102 *U. S.*, 691: "Commerce with foreign countries and among the states, strictly considered, consists of intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities. For the regulation of commerce as thus defined, there can be only one system of rules applicable alike to the whole country, and the authority which can act for the whole country can alone adopt such a system. Action upon it by separate states is not, therefore, permissible. Language affirming the exclusiveness of the great power over commerce, as thus defined, may not be inaccurate, when it would be so if applied to legislation upon subjects which are merely auxiliary to commerce," &c. (It appears that efforts are now being made in Congress to pass a law upon the subject.)

We are fully aware of all the presumptions in favor of the constitutionality of an act of the legislature, and we feel sensibly the great and delicate responsibility imposed upon us; but reluctant

as we may be, we are constrained by our sense of duty to concur with Judge Kershaw in holding "that any regulation of freights for the transportation from Columbia in this state to points in the State of North Carolina, by the statutes of this state, is beyond the power of the state, because of its being an invasion of the power exclusively vested in Congress by the constitution of the United States."

The judgment of this court is that the judgment below be affirmed.[1]

---

[1] This ends the cases of April Term, 1884. The last eleven of these cases were heard at the adjourned April Term, in November.