THE PEOPLE OF THE STATE OF ILLINOIS

*v.*

THE WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY.

*Filed at Springfield September 28, 1882.*

1. RAILROADS—*unjust discrimination in charges—statute not limited to corporations of this State, or to transportation within the State—and in what consists unjust discrimination.* Section 87 of the Railroad act, to prevent unjust discriminations in the rates charged for transporting passengers or freights, etc., is not limited to railroads organized under the laws of this State, but includes all railroad companies which operate railroads in this State, regardless of the States in which they may have been organized.

2. Under this section of the Railroad law, the offence therein provided against consists in an unjust discrimination in the rates charged,—first, for the transportation of passengers or freight of any description; second, for the use and transportation of any railroad car upon the road; third, for the use of any railroad car upon any of the branches of the road; fourth, upon any railroads connected with the road or its branches which it is authorized to use in the State. There is nothing in the section or act which confines the unjust discrimination for charges for transportation of property within the limits of the State. The language, "within this State," in the last part of the section, has reference to the roads which a railroad company may operate in the State.

3. The words used in section 88 of the act, "if any such railroad corporation shall charge, collect or receive, for the transportation of any passenger or freight of any description upon its railroad, for any distance within this State," etc., was not intended to limit the law to transportation within the State, but its main object is to provide and declare that certain things shall be *prima facie* evidence to sustain a charge of unjust discrimination.

4. SAME—*as to the particular case.* In this case suit was brought in the name of the People against the Wabash, St. Louis and Pacific Railway Company, to recover for an alleged unjust discrimination in the rates of freight charged by that company upon shipments made from different points in this State, and by different persons, to the city of New York. It was alleged the defendant company was a corporation duly organized under the laws of this State, owning and operating a railroad lying partly within this State, and running from Peoria, Illinois, eastward through the station of Gilman, also in the State of Illinois, to the city of Toledo, in the State of Ohio. It was further alleged, the said company transported eastward, upon its said railroad, and upon and over railroads connected therewith, through the said station of Gilman, to New York City, one car-load of corn, of the weight of 26,000 pounds, the charges for the entire distance from Peoria to

New York being $39, or at the rate of fifteen cents per 100 pounds. That at the same time the defendant company, for other parties, transported from the said station of Gilman, a point eighty-six miles eastward from Peoria, a car-load of freight of the same class, and of like quantity, to the city of New York, for which it demanded and received, as charges for carriage from Gilman to New York, the sum of $65, or at the rate of twenty-five cents per 100 pounds. This excess in charges for the lesser distance of carriage constituted the alleged unjust discrimination. It was held the action was well brought, under the 87th section of the act which prohibits the making of unjust discriminations by railroad companies in their charges for the transportation of freight. That act is not to be limited in its application to freights carried from one point to another wholly within the State, but may as well apply where the carriage is from a point within the State to a point without the State.

· 5. SAME—constitutionality of the act as affecting inter-State commerce. A State law to prevent the unjust discrimination in rates for the transportation of passengers or freight from a point within to a point without the State, though it may incidentally affect commerce between States, can not be said to be a law regulating commerce among the States, within the meaning of the Federal constitution, especially when it does not purport to exercise control over any railroad corporation except those that run or operate in the State, and which have domestic relations with the people of the State.

6. If Congress should, under the provision of the Federal constitution authorizing the same, pass a law regulating the charges of all railroads engaged in inter-State commerce, it may be that the law of this State on that subject might then be confined to charges for the transportation of property wholly within the State.

7. CONSTRUCTION OF STATUTES—the title of an act—how far to be considered. While the constitution requires the subject of an act to be embraced in the title, it is still no part of the law, and is not to be regarded in a question as to the intent of the legislature. At all events, it can have no controlling effect. It may have a slight bearing when considered in connection with the whole act, but that is all.

8. SAME—the evils to be remedied to be considered. In construing an act of the legislature it is a legitimate inquiry to ascertain the purpose and object of the law, the evil to be remedied, and the wrong to be righted by its passage.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. OWEN T. REEVES, Judge, presiding. ·

This was an action of debt brought in the court below, in the name of the People of the State of Illinois against the Wabash, St. Louis and Pacific Railway Company. The

declaration contained several counts, but the alleged cause
of action is substantially set forth in the first count, which is
as follows:

"For that whereas, heretofore, to-wit, on the 29th day of
August, A. D. 1881, at, to-wit, the county of Ford, aforesaid,
the said defendant was a railroad corporation, duly organ-
ized and incorporated under the laws of the State of Illinois,
and was then and there owning and operating a certain rail-
road lying partly within the State of Illinois, and running
from Peoria, in the county of Peoria, in the State of Illinois,
eastward through the stations of Gilman and Sheldon, in
said Iroquois county, to Toledo, in the county of Lucas, and
State of Ohio, commonly known as the Wabash, St. Louis
and Pacific railroad, and was then and there doing business
as a common carrier of freight and passengers upon and over
said railroad, and afterwards, to-wit, on the day and year
aforesaid, to-wit, at the county of Peoria aforesaid, the said
defendant, at the request of Joseph Elder and D. McKinney,
partners, doing business under firm name of Elder & McKin-
ney, and residents and citizens of said State of Illinois, carried
and transported eastward, upon and over said line of railroad
owned and operated by it as aforesaid, and upon and over
railroads connected with said defendants, for said Elder &
McKinney, from Peoria aforesaid, a station upon said rail-
road, through said Gilman to New York City, in the State of
New York, a large quantity of freight, to-wit, one car-load
of corn, of a great weight, to-wit, of the weight of 26,000
pounds, of the goods and chattels of said Elder & McKinney,
and that defendant afterwards, to-wit, on the day and year
aforesaid, at, to-wit, the county of Peoria aforesaid, charged,
demanded, received and collected of and from said Elder &
McKinney, as and for said defendant's entire toll and com-
pensation for the said carriage and transportation of said one
car-load of corn upon and over said railroad, and said con-
necting lines of railroad, from said Peoria to said New York

City, a large sum of money, to-wit, the sum of $39. And afterwards, to-wit, on the same day and year last aforesaid, at, to-wit, the county of Iroquois aforesaid, the said defendant, at the request of Isaac Bailey and F. O. Swannell, partners, as Bailey & Swannell, and residents of said county, carried and transported for said Bailey & Swannell, eastward upon and over said line of railroad owned and operated by the said defendant as aforesaid, and upon some other lines of railroad connected therewith, over which said corn was transported from Gilman aforesaid, in the county of Iroquois, and State of Illinois, a station upon said railroad, to New York City, in the State of New York, a certain other large quantity of freight, to-wit, one car-load of oil cake, of a great weight, to-wit, of the weight of 26,000 pounds, of the goods and chattels of said Bailey & Swannell, and that defendant afterwards, to-wit, on the same day and year aforesaid, at, to-wit, the county of Iroquois aforesaid, charged, demanded, received and collected of and from said Bailey & Swannell, as and for said defendant's toll and compensation for the said transportation and carriage of said one car-load of oil cake last aforesaid, upon and over its said railroad, and said connecting lines of railroad, from said Gilman to said New York City, a large sum of money, to-wit, the sum of $65, which the said Bailey & Swannell then and there paid to defendant for such carriage and transportation of said one car-load of oil cake last aforesaid, from Gilman aforesaid, to said New York City, as aforesaid.

"And plaintiffs aforesaid aver that said goods and chattels, —oil cake,—last aforesaid, carried and transported by said defendant as aforesaid, was of like quantity, and of the same class of freight as the freight first aforesaid, to-wit, the one car-load of corn carried and transported by said defendant as aforesaid, and was carried and transported, to-wit, at the same time, and in the same direction, and over the same lines of railroad, by said defendant, as said car-load of corn

hereinbefore mentioned. And the plaintiffs further aver, that the distance over and upon the line of said defendant's railroad over and upon which said corn was carried and transported from. said Peoria eastward to Sheldon, a station on the line of said road near the eastern boundary of the State of Illinois, is, to-wit, one hundred and nine miles, and that the distance from said Gilman, a station upon the line of said railroad, over and upon the line of said railroad over and upon which said car-load of oil cake was carried and transported to said station of Sheldon, near the eastern boundary of said State, is only, to-wit, twenty-three miles, and that the distance from said Gilman to said New York City, upon the route or railroads over and upon which said goods and chattels,—oil cake aforesaid,—were carried and transported, is less than the distance from said Peoria to the city of New York aforesaid, upon the route or railroads over and upon which said goods and chattels,—corn,—were transported, by eighty-six miles. And the plaintiffs further aver, that the said defendant's rate of freight so charged, collected and received as aforesaid, for the carriage and transportation of said car-load of corn from Peoria aforesaid to said city of New York, was only fifteen cents per 100 pounds per car load, making the sum, to-wit, of $39 aforesaid, and that the said defendant's rate of freight so charged, collected and received, as aforesaid, for the carriage and transportation of said car-load of oil cake, from Gilman aforesaid to said New York City, a less distance, was twenty-five cents per 100 pounds per car load, making, to-wit, the sum of $65 aforesaid. And the plaintiffs further aver, that the said defendant made, demanded, collected and received, to-wit, the same proportionate discrimination in the said rates of freight for the transportation of said goods and chattels, to-wit, said oil cake and corn, upon and over its line of railroad in the State of Illinois, that was made, demanded, collected and received, as heretofore alleged, for said trans-

portation between said Peoria and New York City, and said Gilman and New York City, whereby, and by means of the premises aforesaid, the plaintiffs aver that the said defendant has been guilty of making an unjust discrimination in the rates of freight in the State of Illinois, in the carriage and transportation of said goods and chattels, to-wit, one car-load of corn and one car-load of oil cake aforesaid, to the great injury of the citizens of said State, and contrary to the form of the statutes of said State in such cases made and provided, and against the peace and dignity of the People of the State of Illinois, whereby an action hath accrued unto the said plaintiffs, to have and demand of. and from the said defendant the sum of $5000, parcel of the said sum above demanded."

A demurrer was sustained to the several counts in the declaration, and the People thereupon sued out this writ of error.

Mr. JAMES McCARTNEY, Attorney General, for the People:

The statute against unjust discrimination is not confined in its force to the carriage of freights, etc., wholly within this State. The words "within this State," in section 2, have reference to the roads which any company has the right or license to operate or use in this State. The act was intended to apply to any discrimination made in this State, no matter where the carriage is to be done. The State, until Congress shall provide a law governing inter-State commerce, may pass such a law affecting railroad companies in this State, or operating here, even though such regulation may incidentally reach beyond the State. *Peck* v. *Chicago and Northwestern Ry. Co.* 94 U. S. 164; *Chicago, Burlington and Quincy R. R. Co.* v. *Iowa,* id. 155; *Railroad Co.* v. *Fuller,* 17 Wall. 560.

Unjust discrimination in the carriage of freights was an offence at common law. *McDuffee* v. *Portland and Rochester R. R. Co.* 52 N. H. 430; *Messenger et al.* v. *Pennsylvania*

31—104 ILL.

*R. R. Co.* 36 N. J. L. 407; *Chicago and Alton R. R. Co.* v. *People ex rel.* 67 Ill. 11.

Mr. A. SAMPLE, also for the People, took the same ground, and further contended that the exercise of the police power by the State, to prevent unjust discrimination in the transportation of property from within the State to points in another State, is not in violation of that provision of the Federal constitution which gives to the Congress the right to regulate inter-State commerce, citing *Railroad Co.* v. *Fuller,* 17 Wall. 560; *Munn* v. *Illinois,* 93 U. S. 113; *Peck* v. *Chicago R. R. Co.* id. 175.

Mr. H. S. GREENE, and Mr. F. T. HUGHES, for the defendant in error:

Freight delivered to a carrier, to be transported from a point within this State to a point in a distant State, can not be regarded as local or domestic freight. The very moment it is so delivered and marked, the character of inter-State commerce attaches to it, even while passing through this State. *The Daniel Ball,* 10 Wall. 557.

The power to regulate commerce between the States is vested solely in Congress. *Gibbon* v. *Ogden,* 9 Wheat. 196; *Homes* v. *Jennison,* 14 Pet. 570; *Brown* v. *State of Maryland,* 12 Wheat. 446; *New York* v. *Miln,* 11 Pet. 158; *Wilson* v. *Black Creek Marsh Co.* 2 id. 250.

The non-exercise of that power by Congress is equivalent to a declaration by that body that such commerce shall be free from any restriction. *Welton* v. *State of Missouri,* 91 U. S. 275.

That the cases cited by the Attorney General do not justify the inference drawn from them, is demonstrated in the reasoning of the court in *Hall* v. *DeCuir,* 95 U. S. 485; *County of Mobile* v. *Kimball,* 102 id. 691; *Webber* v. *Virginia,* 103 id. 344.

Mr. Justice Craig delivered the opinion of the Court:

The declaration in this case contained several counts, but the substance of the averments in each was, that the defendant carried the same class of freight from Peoria to New York City for a less sum of money than it carried similar freight from Gilman to New York, and that Peoria was a greater distance from New York than Gilman. The decision of the court sustaining a demurrer to the declaration was no doubt predicated on the view either that the statute did not in terms apply to the transportation of property beyond the limits of the State, or that the legislature had no power to pass a law regulating charges for the transportation of property from a point within the State of Illinois to a point within the State of New York. The action was brought under sec. 87, Rev. Stat. 1874, page 817, which declares: "If any such railroad corporation aforesaid shall make any unjust discrimination in its rates or charges of toll or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon its said road, or upon any of the branches thereof, or upon any railroads connected therewith, which it has the right, license or permission to operate, control or use within this State, the same shall be deemed guilty of having violated the provisions of this act, and upon conviction thereof shall be dealt with as hereinafter provided."

In order to arrive at a proper construction of this section, it should be read in connection with section 86, which precedes it. That section declares: "If any railroad corporation organized or doing business in this State * * * shall charge, collect, demand or receive more than a fair and reasonable rate of toll or compensation for the transportation of passengers or freight of any description, or for the use and transportation of any railroad car upon its track, or any of the branches thereof, or upon any railroad

within this State which it has the right, license or permission to use, operate or control, the same shall be deemed guilty of extortion, and upon conviction thereof shall be dealt with as hereinafter provided." It will be observed that this section is not limited to railroads organized under the laws of this State, but includes all railroad companies which operate railroads in this State, regardless of the State in which they may be organized, and the language of the first part of section 87, "if any such railroad corporations shall," etc., brings all railroad corporations which operate railroads in the State within the provisions of the section, whether they may be organized under our law or under the laws of some other State. The statute seems to make no distinction whatever between a railroad organized in this State and a railroad organized in another State, and by the terms of the section the offence consists in an unjust discrimination in the rates charged,—first, for the transportation of passengers or freight of any description; second, for the use and transportation of any railroad car upon the road; third, for the use of any railroad car upon any of the branches of the road; fourth, upon any railroads connected with the road or its branches which it is authorized to use in the State. There is nothing here which would confine the unjust discrimination to charges for the transportation of property within the limits of the State. The use of the words, "within this State," in the last part of the section, can not, by any fair construction, be held to limit the unjust discrimination mentioned in the statute to charges for the transportation of freight wholly within the State. The language, "within the State," has reference to the roads which a railroad company may operate in the State.

Reliance is placed upon the language of the first part of section 88, which declares: "If any such railroad corporation shall charge, collect or receive for the transportation of any passenger or freight of any description upon its railroad, for any distance within this State," etc. But upon an exam-

ination of the whole section it will be seen that it was not intended for the purpose claimed, but its main object is to provide and declare that certain things shall be *prima facie* evidence to sustain a charge of unjust discrimination.

The title of the act is referred to, in order to sustain the position of the defendant. It is true, the constitution requires the subject of an act to be embraced in the title, but the title of an act is no part of the law, and we do not understand that the title is to be regarded a question as to the intent of the legislature. At all events it can have no controlling effect. It might have a slight bearing when considered in connection with the whole act, but that is all.

Again, in arriving at a proper construction to be placed upon an act of the legislature, it is a legitimate inquiry to ascertain the purpose and object of the law, the evil to be remedied, and the wrong to be righted by the passage of the law. Now, if the object was to provide a reasonable and uniform system of rates, and one which would prohibit a common carrier from charging one person more than another, why should a system be established which would afford relief and protection when property is to be transported from one point to another in the State, and make no provision whatever where property is to be shipped from a point within to some point without the State? It is a part of the history of the country, with which the legislature was no doubt familiar when the law was enacted, that a much larger per cent of the property shipped by rail was transported out of the State than from one point to another within the State. This being the case, it is unreasonable to believe that the legislature would provide relief in the latter case and take no action whatever to avert the evil in the former.

But it is urged, if we are correct in the view that the law is broad enough to include unjust discrimination in the rates of charges for the transportation of property from a point within to a point without the State, then the statute is in

conflict with section 8, article 1, of the Federal constitution, which declares that Congress shall have the power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." There is no doubt in regard to the right and the power of Congress to regulate commerce among the States, but a law of a State which may incidentally affect commerce among the States has never, so far as we are informed, been regarded as falling within the inhibition of the Federal constitution. In *Hall* v. *De Cuir*, 95 U. S. 487, where this question was under discussion, it is said: "There can be no doubt but that exclusive power has been conferred upon Congress in respect to the regulation of commerce among the several States." The difficulty has never been as to the existence of this power, but as to what is to be deemed an encroachment upon it; for, as has been often said, "legislation may, in a great variety of ways, affect commerce, and persons engaged in it, without constituting a regulation of it, within the meaning of the constitution."

It is no doubt true that the statute to prevent unjust discrimination in the rates of charges of railroad companies, under which this action was brought, may affect commerce, but in our judgment it can not be said to be a law regulating commerce among the States, within the meaning of the Federal constitution. The law does not purport to exercise control over any railroad corporation except those that own or operate a railroad in the State,—such companies as have domestic relations with the people of the State,—and as we understand the decisions of the Supreme Court of the United States, similar laws enacted by State authority have been upheld and sustained, although such laws may affect commerce. *Peck* v. *Chicago and Northwestern Ry. Co.* 94 U. S. 164, is a case in point. The Chief Justice, in delivering the opinion of the court, as respects the question involved, said: "The suits present the single question of the power of the legislature of Wisconsin to provide, by law, for a maximum

of charge to be made by the Chicago and Northwestern Railway Company for fare and freight upon the transportation of persons and property carried within the State, or taken up outside the State and brought within it, or taken up inside and carried without." In regard to the act of the legislature being in conflict with the constitution of the United States, the court said: "As to the effect of the statute as a regulation of inter-State commerce, the law is confined to State commerce, or such inter-State commerce as directly affects the people of Wisconsin. Until Congress acts in reference to the relations of this company to inter-State commerce, it is certainly within the power of Wisconsin to regulate its fares, etc., so far as they are of domestic concern. With the people of Wisconsin this company has domestic relations. Incidentally these may reach beyond the State. But certainly, until Congress undertakes to legislate for those who are without the State, Wisconsin may provide for those within, even though it may indirectly affect those without."

A similar question arose in *Chicago, Burlington and Quincy R. R. Co.* v. *Iowa*, 94 U. S. 155, and it is there said: "The objection that the statute complained of is void because it amounts to a regulation of commerce among the States, has been sufficiently considered in the case of *Munn* v. *Illinois*. This road, like the warehouse in that case, is situated within the limits of a single State. Its business is carried on there, and its regulation is a matter of domestic concern. It is employed in State as well as inter-State commerce, and until Congress acts, the State must be permitted to adopt such rules and regulations as may be necessary for the promotion of the general welfare of the people within its own jurisdiction, even though in so doing those without may be indirectly affected."

But it is said the cases cited are not authority, as the question involved here did not, and could not, arise in those cases. In the *Peck case*, one of the allegations of the bill

upon which complainant relied to defeat the law of the State
was, "that the 18th section is a regulation of inter-State
commerce;" and in the argument before the Supreme Court,
one of the points relied upon, as shown in the statement of
the case, was as follows:   "The act is a regulation of inter-
State commerce, and for that reason unconstitutional."   In
the other case (*Chicago, Burlington and Quincy R. R. Co.* v.
*Iowa*,) we find a similar allegation in the bill, and the same
question raised in the argument.   When a question is pre-
sented by a bill in equity, urged and relied upon in the argu-
ment, and passed upon by the court in the opinion, it can
not with reason be said that the point was not involved, and
the opinion of the court on the question is *obiter*.   The ques-
tion was made by the pleadings, argued by counsel, and
decided by the court.   Under such circumstances we per-
ceive no good reason why the decision of the court may not
be relied upon as authority.   The statute in question, as
before observed, was not passed for the purpose, or with the
view, of regulating commerce among the States,—its object
was to reach railroad companies which derived their powers
to transact business from this State,—those that were organ-
ized under the laws of this State, and those that were organ-
ized in another State and doing business in this State.   The
regulation imposed by the statute is a matter of domestic
concern, pertaining to the people of the State and the rail-
roads of the State.   The Wabash railroad company, which
was sued in this case, is engaged in State as well as inter-
State commerce, and as was said in the *Burlington case,
supra*, the State must be permitted to adopt such rules and
regulations as may be necessary for the promotion of the
general welfare of the people within its own jurisdiction,
even though in so doing those without may be incidentally
affected.   Should Congress, under the provision of the con-
stitution which authorizes the regulation of commerce among
the States, pass a law regulating the charges of all railroads

engaged in inter-State commerce, it may be that the law of this State might then be confined to charges for the transportation of property wholly within the State; but no such law has been passed, and that question does not arise here.

In conclusion, we are of opinion that the question involved is controlled by the decisions in the two cases cited, which, so far as we can find, have not been modified by any subsequent decision of the Supreme Court of the United States.

The judgment of the circuit court will be reversed, and the cause remanded.

*Judgment reversed.*

Separate opinion by Mr. Justice Walker:

The legislature has the power to regulate the schedules of charges for passengers and freight, under the 15th section of article 11 of our constitution. In pursuance of that power it adopted the 87th section of the chapter entitled "Railroads and Warehouses." That section provides, that "if any such railroad corporation aforesaid shall make any unjust discrimination in its rates or charges of toll or compensation for the transportation of passengers or freight of any description, or for the use or transportation of any railroad car upon its said road, or upon any of the branches thereof, or any railroad connected therewith, which it has the right, license or permission to operate, control or use within this State, the same shall be deemed guilty of having violated the provisions of this act, and upon conviction thereof shall be dealt with as hereinbefore provided."

The averment in the declaration is, that defendant in error, at the times stated, shipped freight of the same grade or class for a less rate from Peoria to New York than from Gilman to New York, the latter named place being a shorter distance than the former. When it is remembered that both cities are on the line of the road of defendant in error, and the freight shipped from Peoria to New York passed through Gilman to

reach its destination, it is apparent that there was a discrimination against Gilman, or the person who shipped from that point. The map shows, that by that road Gilman is between eighty and one hundred miles nearer New York than Peoria. The haul of the freight in this State from Peoria to the Indiana line was over one hundred miles, and from Gilman to that line about twenty-five miles. Thus it is seen that the service rendered for the shipper in Peoria, in this State, was four times, at least, greater than for the shipper from Gilman. This was a discrimination against the shipper at the latter place, he being charged at the rate of more than four times as much for the same service within this State, and comes clearly within the provisions of the section. This stands confessed by the demurrer.

But it is insisted that the discrimination may have been made after the freight passed beyond the boundary of the State. This presumption, if there could be such a presumption, is repelled by the averment that defendant in error made the charges complained of by plaintiffs in error. If the company undertook to make rates, it must have been because it had the authority from the lines beyond the limits of the State. We will and must presume that the rates beyond the State line to New York were the same on the same class of freight, and if so, then it inevitably follows that the company discriminated in favor of the longer haul, and against the shorter one, for services in this State, and that brings the case within the statute, and renders the company liable. I, for these reasons, concur in the decision of the court in this case, reversing the judgment of the court below.