(No. 13180.—Judgment affirmed.)

THE PUBLIC UTILITIES COMMISSION *vs.* THE SPRINGFIELD
TERMINAL RAILWAY COMPANY, Appellee.—(THE CHI-
CAGO AND ALTON RAILROAD COMPANY *et al.* Appellants.)

*Opinion filed April 21, 1920.*

1. PUBLIC UTILITIES—*when short line railroad is not under Fed-eral control.* By the acts of Congress of August 29, 1916, and March 21, 1918, and by the President's proclamation of Decem-ber 26, 1917, the Federal government took possession and assumed control of all railroads which in the President's discretion were needful for war purposes, but it was not intended that the Fed-eral government assume control of every "tap line" or other short line of railroad unless its use became necessary, and until the Di-rector General by some affirmative act has assumed control over such a line the State has authority to regulate its rates.

2. SAME—*State may regulate railroad rates by virtue of police power.* Under the police power the State has authority to regulate rates to be charged by railroads within its jurisdiction.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

N. S. BROWN, FESLER, ELAM & YOUNG, and WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, and FRANK H. TOWNER, of counsel,) for appellants.

W. M. HOPKINS, for appellee.

EDWARD J. BRUNDAGE, Attorney General, ALBERT D. RODENBERG, and MATTHEW MILLS, for the Public Utilities Commission.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The issue raised by this appeal is whether the United States government, in taking over the railroads from private ownership to its control and operation, assumed authority to regulate rates to the exclusion of the authority of the

several States. It arises from the judgment of the circuit court of Sangamon county confirming the decision of the Public Utilities Commission entered June 4, 1918, permitting the Springfield Terminal Railway Company to increase its switching charge from two dollars a car to ten cents a ton, with a minimum charge of two dollars a car and a maximum charge of four dollars a car.

The Springfield Terminal Railway Company is a corporation organized under the general Railroad Incorporation act of Illinois. It operates about seven miles of line just outside the city of Springfield, Illinois, connecting the Jones & Adams Coal Company's mines with the tracks of a number of trunk lines, including the Chicago and Alton Railroad Company, the Wabash Railway Company and the Cincinnati, Indianapolis and Western Railroad Company, appellants. Appellants protested against the entrance of the order granting the increase of rates, contending that the commission had no jurisdiction to enter the order, for the reason that at that time the railroads of the country were being operated by the Federal government through the Director General of Railroads, their control having been taken over under presidential proclamation dated December 26, 1917. The determination of the issue thus raised requires an interpretation of the Federal statutes and the proclamations of the President of the United States.

On the 29th of August, 1916, Congress gave the President power "in time of war * * * to take possession and assume control of any system or systems of transportation or any part thereof, and to utilize the same to the exclusion, as far as [might] be necessary, of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as [might] be needful or desirable." (U. S. Comp. Stat. 1916, sec. 1974*a*.) War with Germany was declared April 6, 1917, and with Austria December 7 of the same year. December 26, 1917, the Presi-

dent, referring to the existing state of war and the power with which he had been invested by Congress in August, 1916, by proclamation declared in part: "It has now become necessary in the national defense to take possession and assume control of certain systems of transportation and to utilize the same to the exclusion, as far as may be necessary, of other than war traffic thereon, for the transportation of troops, war material and equipment therefor, and for other needful and desirable purposes connected with the prosecution of the war: Now, therefore, I, Woodrow Wilson, President of the United States, under and by virtue of the powers vested in me by the foregoing resolutions and statute and by virtue of all other powers thereto me enabling, do hereby, through Newton D. Baker, Secretary of War, take possession and assume control at twelve o'clock noon on the twenty-eighth day of December, 1917, of each and every system of transportation and the appurtenances thereof, located wholly or in part within the boundaries of the continental United States, and consisting of railroads and owned or controlled systems of coastwise and inland transportation engaged in general transportation, whether operated by steam or electric power, including also terminals, terminal companies and terminal associations, sleeping and parlor cars, private cars and private car lines, elevators, warehouses, telegraph and telephone lines, and all other equipment and appurtenances commonly used upon or operated as a part of such rail or combined rail and water systems of transportation, to the end that such systems of transportation be utilized for the transfer and transportation of troops, war material and equipment, to the exclusion, so far as may be necessary, of all other traffic thereon, and that, so far as such exclusive use be not necessary or desirable, such systems of transportation be operated and utilized in the performance of such other services as the national interest may require and of the usual and ordinary business and duties of common carriers." By the procla-

mation the Director General of Railroads was appointed, with full authority to take possession and control of the systems embraced by the proclamation and to operate and administer the same. The proclamation concluded with the further declaration that "all transportation systems included in this order and proclamation shall conclusively be deemed within the possession and control of the director without further act or notice." On March 21, 1918, Congress, further dealing with the subject, passed an act in the opening sentences of which it declared, "the President having in time of war taken over the possession, use, control and operation of certain railroads and systems of transportation, is hereby authorized to agree with and to guarantee to any such carrier" certain specified compensation for the use of its lines. (U. S. Comp. Stat. 1918, sec. 3115¾a.) Section 10 of this act gave to the President the right to initiate rates, charges, etc., whenever in his opinion it became necessary. Section 15 of the act provided that nothing in the act should "be construed to amend, repeal, impair or affect * * * the lawful police regulations of the several States, except wherein such laws, powers or regulations [might] affect the transportation of troops, war materials, government supplies or the issue of stocks and bonds."

No argument is necessary to make it clear that by these acts and proclamations the United States was given complete possession and control of all railroads for all purposes. (*Northern Pacific Railway Co.* v. *State of North Dakota,* 250 U. S. 135, 39 Sup. Ct. 502.) On the other hand, it will be noted the act of 1916 was permissive,—not mandatory. The intention of Congress was to empower the President to take possession and assume control and operation of any system or systems of transportation that in his discretion were needful for war purposes. By his proclamation of December 26 the President determined that it had become necessary in the national defense to take over and assume control of "certain systems of transportation" and

to use them for needful and desirable purposes connected with the prosecution of the war. To provide the government with all means of transportation that might become necessary the President made his proclamation broad enough to include "each and every system of transportation," but we do not think it was intended by that proclamation to assume control of every "tap line" or other short line of railroad unless its use became necessary for the purposes for which the government assumed control and operation of railroads. By the act of March 21, 1918, it will be seen that Congress did not understand that the President had taken over the control and operation of all railroad systems in the United States, because it provides for compensation to "certain railroads and systems of transportation" of which the President had assumed control.

It is conceded that the Director General of Railroads did not exercise jurisdiction over the Springfield Terminal Railway Company, and that of the hundreds of orders issued by the Director General from time to time, directing the affairs and operations of transportation systems under Federal control, no order was ever given concerning the operation of the appellee. The authority of the State to regulate rates to be charged by railroads is derived from its police powers. (*Arkansas Rate Cases,* 187 Fed. 290; 10 Corpus Juris, 662; 6 R. C. L. 225.) Section 15 of the act of March 21, 1918, specifically reserved to the States their existing powers of regulation, except when such powers or regulations affected the transportation of troops and supplies. Until the Director General by some affirmative act assumed control over appellee the State had authority to act. (*People* v. *Wabash, St. Louis and Pacific Railway Co.* 104 Ill. 476.) The court, therefore, properly found that appellee was not at the time this order was entered, and never had been, under Federal control.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*