**Phoebe Miner, Plaintiff in Error, v. Elmore H. Stafford et al., members of Board of Trustees of Police Pension Fund of Rock Island, Illinois, Defendants in Error.**

### Gen. No. 7,542.

1. OFFICERS AND PUBLIC EMPLOYEES—*power to increase or diminish amounts of future instalments of pensions.* Since a pension is a bounty, to be given or withheld at the pleasure of the sovereign power and necessarily to be paid in the future after its allowance, the amount of future instalments is to be determined by that power, which may add to or diminish the same, or discontinue them altogether.

2. STATUTES—*application of amended statute to pre-existing conditions as retrospective.* No retrospective application is given to an amendment of a statute providing for payment to the widow of a police officer of a pension equal to one-half of such officer's salary, "not to exceed $600 per year," the amendatory statute re-enacting the former statute verbatim except as to the quoted words, and in place thereof saying: "not to exceed $1,250 per year," by holding that the statute as amended governed the right of a widow of a police officer to a pension after the effective date of such amendment, although the death of such officer occurred prior thereto.

3. STATUTES—*effect of amendment re-enacting amended statute verbatim except as to parts thereof.* Where a statute providing for payment of a pension to the widow of a police officer equal to one-half of his salary, "not to exceed $600 per year," was amended by an act providing that the foregoing act should be amended to read as follows, such amendatory act then restating verbatim the statute

amended, except as to the quoted words, in lieu thereof stating, "not to exceed $1,250 per year," the effect of such amendment was to continue in force all provisions of the former act so repeated, to repeal the provision first quoted and to enact in lieu thereof the second quoted provision, and to leave the act as amended the sole law governing cases falling within the scope of either.

4. STATUTES—*amendment removing limitation upon right created by amended act as affecting remedy instead of rights.* Where a statute providing for payment of a pension to the widow of a police officer equal to one-half of such officer's salary, "not to exceed $600 per year," was amended by re-enacting that statute verbatim except as to the quoted portion, and in lieu thereof stating, "not to exceed $1,250 per year," such amendment did not grant any new right to the widow of an officer dying prior to the effective date of such amendment, nor did it enlarge any right existing under such prior right, although the purpose of the amendment was to remove a limitation upon such former rights, since such limitation affected only the remedy of the pensioner and not her right to be a pensioner, the language of the amendatory act evincing a legislative intent to continue the old act in force, except as to the restriction, as though no amendment had ever been made.

5. STATUTES—*rules for ascertainment of legislative intent.* The legislative intent can be ascertained in three ways: (1) By what it says; (2) by the effect of its act viewed in the light of the rules announced by the courts for the construction of statutes; and (3) by examining the old law, the mischief, the new law and the remedy.

6. STATUTES—*tests for determining mischief to be remedied by amendatory act.* In determining the mischief designed to be remedied by the amendment of a statute the court can take into consideration the social conditions existing when the amendment was made, as well as all those commonly known facts of which courts will take judicial notice.

7. MUNICIPAL CORPORATIONS—*rights of beneficiaries under police pension act as affected by subsequent amendment of statute.* In enacting Laws 1923, p. 251, amendatory of Cahill's St. 1921, ch. 24, ¶ 920, providing for a pension to widows of police officers, it was the intention of the legislature, when it used in the amendatory act precisely the same language as was contained in the prior act, to confer the benefits of the amendment upon those who had been entitled to them under the former act, and simply to remove the limitations imposed by the prior act upon those who were already enjoying the benefits, as well as those who in the future would enjoy them.

Error by plaintiff to the Circuit Court of Rock Island county; the Hon. NELS A. LARSON, Judge, presiding. Heard in this court at the October term, 1925. Reversed and remanded with instructions. Opinion filed December 30, 1925.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for plaintiff in error.

HUBER & REIDY, for defendants in error.

MR. JUSTICE JETT delivered the opinion of the court.

Phoebe Miner, plaintiff in error, filed her petition in the circuit court of Rock Island county for a writ of mandamus to compel Elmore H. Stafford, Rollin C. Berry and William G. Johnston, members of the Board of Trustees of the Police Pension Fund of the City of Rock Island, defendants in error, to pay to her $60 a month instead of $50. A demurrer was filed to the petition which was sustained. Plaintiff in error elected to stand by her petition and this appeal was prosecuted.

It is charged in the petition that Edward Miner, the husband of the plaintiff in error, was a police officer of the City of Rock Island and was killed in the discharge of his duty as such officer on October 15, 1922; that the plaintiff in error made an application for a pension which was granted and she drew $50 per month from the time of the death of her husband until the date the petition was filed in this proceeding, which was October 2, 1924.

At the time of the death of the husband of the petitioner, the Act of 1909 (amended by the Act approved June 30, 1919), with reference to the police pension fund, was in force. Section 6 of that Act [Cahill's St. 1921, ch. 24, ¶ 920] provided as follows: "Whenever any member of the police force of any city, village or town shall lose his life while in the performance of his duty or receive any injury from which he shall thereafter die leaving a widow, or child or

children under the age of 16 years, or parent who is dependent upon such policeman for maintenance and support, then, upon satisfactory proof of such facts made to it such board shall order and direct that a yearly pension equal to one-half the salary received by said member, not to exceed $600 per year, shall be paid to such widow during her life.''

The said Police Pension Fund Act was amended on June 28, 1923, which amendment went into full force and effect on July 1, 1923, and which amendment provides that whenever a member of the police force of any city, village or town shall lose his life while in the performance of his duty or receive injuries from which he shall thereby die, leaving a widow or child or children, under the age of 16 years, that upon satisfactory proof made of such facts to it, such board shall order and direct that a yearly pension equal to one-half of the salary, not to exceed $1,250 per year, shall be paid to such widow during her life and until her remarriage. [Cahill's St. 1925, ch. 24, ¶ 920.]

Petitioner insists that she is entitled to receive as a pension from said Police Pension Fund the sum of $60 per month, from and after the 1st day of July, 1923, the day when the Police Pension Fund Act was amended and when said amendment went into effect. She made a demand upon the Board of Trustees of the Police Pension Fund for said allowance from the 1st day of July, 1923. The Board of Trustees of said Fund refused to pay the amount of $60 per month, as provided for by the amendment.

The question involved is whether or not the General Assembly, by amending the Act of 1923 by changing only the figures in limitation of the amount of the widow's pension, intended to remove the limitation of pensions of widows of policemen who were killed in service prior to the passage of the amendment or whether the increasing of the limitation in 1923 was to apply only to widows of policemen whose death oc-

curred subsequent to July 1, 1923. In other words, the question is: What was the intention in enacting the amendment to section 6 in 1923? In answering this question we must be guided by the statute and general rules of construction for there is no case in this or any other jurisdiction, so far as we have been able to ascertain, which decides the particular question here involved. It is the contention of the defendants in error that this cause is one which must be governed by the rules of construction that holds a statute to be prospective unless the will of the legislature to give it a retrospective effect is declared in terms so positive as to admit of no doubt. In order to determine the question involved it must be remembered that a pension is a bounty springing from the graciousness and appreciation of sovereignty. It may be given or withheld at the pleasure of a sovereign power, and under the statute in question is paid in instalments for the life or until the remarriage of the widow. Necessarily it is to be paid in the future after its allowance, and the amount of the future instalments is to be determined by the sovereign in the future who can either be liberal or penurious, who can add to or diminish or take away entirely at its pleasure. It must also be borne in mind that the husband of the plaintiff in error was killed October 15, 1922, and that his salary as such policeman at the time of his death was $120 per month or $1,440 per year; that plaintiff in error applied for a pension on February 1, 1924, and on March 1, 1924, the defendants in error (the Police Pension Board) allowed her a pension from October 15, 1922, and to continue during her life or until she remarried, at the rate of $50 per month or $600 per year. This amount was exactly the amount of the limitation imposed by the law of 1909, but was less by $10 per month than one-half of the salary drawn by her husband at the date of his death.

It is also proper to bear in mind that the plaintiff

in error does not make any claim for an increase covering any period prior to the going into effect of the amendment of 1923. Section 2 of chapter 131, entitled "Statutes," provides that: "The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such prior provisions and not as a new enactment." [Cahill's St. ch. 131, ¶ 2.] If this statutory rule of construction is applied then the amendment of 1923, being the same as the Act of 1909, excepting as to the limitation on the amount of the pension to the widow of a policeman killed in service, continues the right to the petitioner as it existed prior to the amendment, and simply removes the limitations as to the amount contained in the Act of 1909, but continues in force the provision that such widow shall receive a yearly pension equal to one-half the salary received by such member of the police force who lost his life. If this be true, then since 1923 the only limitation upon petitioner's right to a pension equal to one-half of her deceased husband's salary is the limitation contained in the amendment of $1,250 per year, which repeals the limitation of $600 per year contained in the old act. If this be not true, what determines the amount of the pension a widow is entitled to receive since the amendment? The limitation of $600 in the old act cannot govern after the adoption of the amendment because that limitation was repealed by the amendment. It, therefore, necessarily follows that the limitation in the amended Act of 1923 must govern because that is the only law remaining in the statute on the subject. There is no question of giving a retrospective construction to the amendment of 1923 because the petitioner does not seek to compel the defendants in error to pay her more than $600 per year during the period between her husband's death and July 1, 1923, the date the amendment became effective. She seeks only an amount equal to one-half her hus-

band's salary since July 1, 1923, and this amount is not in excess of the amount of the limitation imposed by the amendment of 1923. The amendment was simply to remove the limitation imposed by the act in force when her husband lost his life. The Act of 1923 gives her no new rights for the reason that her right to a pension was given by the Act of 1909, and by the express words of that act which was continued in force by the amendment of 1923 she was entitled to a pension equal to one-half of her husband's salary. By removing the limitation imposed in the Act of 1909, by substituting the new and larger limitation in the amendment of 1923, the effect was to automatically raise her pension to an amount equal to one-half of her husband's salary after the amendment became effective. This does not require any retrospective construction to be given to the amended statute. It simply gives force and effect to all portions of the law of 1909 which were re-enacted and continued by the amendment of 1923 but would give no force and effect to that portion of the Act of 1909 which was repealed because changed by the amendment, namely, the substituting of the limitation of the amount of the pension of $1,250 per year in place of $600 per year. The pension was to continue in the future and manifestly the future amount was to be determined by the future Acts of the General Assembly in relation thereto. If the legislature increased the amount then this affected only the remedy, and the new act would apply, without regard to whether the right to the pension accrued before or after the change in the law.

If the new act had to do with the right to a pension—that is, if the amendment provided that some person, not entitled to a pension under the old act, should receive a pension, then, a person within the same class as the new pensioner, but whose right accrued after the enactment of the amendment, would not come within the amendment and become liable to

a pension unless the language of the act was such as to clearly evidence a legislative intent to make the act retrospective. Such is the case of *Eddy v. Morgan,* 216 Ill. 437, relied upon by the defendants in error.

But where the change by the amendment is simply to change the remedy, or the amount which the pensioner should receive, and to enlarge the limitation or restriction imposed by the old law, a converse rule of construction is applied. In support of this rule is the case of the *Chicago & W. I. R. Co. v. Guthrie,* 192 Ill. 579. It is said: "If a change in the law affects only the remedy or procedure all rights of action are governed thereby, without regard to whether they accrued before or after such change and without regard to whether suit had been previously instituted or not, unless there is a saving clause as to existing litigation."

A limitation or restriction on the amount of a pension has to do only with the remedy of the pensioner and nothing to do with her right to be a pensioner. Tested by any rule relating to construction of statutes, the amendment of 1923 did not grant any new right or enlarge any old right to a widow of a police officer who may have lost his life in the service, although its only purpose was to remove a restriction or limitation upon the old right. This, however, is only because of the manner in which the legislative intent was expressed. The Act of 1923 being a re-enactment of the law of 1909, in so far as section 6 is concerned, simply and only re-enacted the 1909 Act, without the change of a word, syllable or punctuation mark except as to the amount to which a pensioner's right to a pension equal to one-half of her deceased husband's salary was restricted or limited by the phrase "not exceeding $600." The effect was to continue the old act in force, except as to the restriction, precisely as though no amendment had ever been made.

The legislative intent can be ascertained in three

ways: (1) By what it says; (2) by the effect of its act viewed in the light of the rules announced by the courts for the construction of statutes; and (3) by examining the old law, the mischief, the new law and the remedy. In determining the mischief designed to be remedied, the court can take into consideration the social conditions existing when the amendment was made as well as all those commonly known facts of which courts will take judicial knowledge. Considering this act in the light of the above rules for determining the intent of the General Assembly, we find: (1) there is nothing stated in the act which states whether the restriction was intended to be removed or not, depending upon the date of the death of the policeman. (2) The effect of the act is to re-enact the old law without the restriction therein contained. Its effect then comes within the rule announced in the case of *Merlo v. Johnston City, etc., Coal & Mining Co.*, 258 Ill. 328, namely: Where an amendatory act provides that a certain act or a certain section of an act shall be amended so as to read as the same is repeated in the amendatory act, all such portions of the old act or section as are not repeated in the new act are repealed, without any express words for that purpose, but such portions of the old law as are retained, either literally or substantially, are regarded as a continuation of the old law and not as a new act; that where a statute is revised and rewritten, only such portions of the old act as are omitted from the revised act are repealed, and all the provisions of the old act which are retained in the new one are regarded as having been continuously in force, without any hiatus between the going out of the old law and the coming in of the new, as both events happen at the same instant; that this rule with reference to revisions of statutes is the same as the rule with reference to the amendment of statutes.

In the above case the deceased was killed in an ex-

plosion in the mine of the plaintiff in error on November 29, 1909. Suit was commenced April 22, 1910. The cause was tried and final judgment entered in the cause on June 22, 1911. In 1911 the General Assembly passed an act revising the law relating to coal mining, which went into effect July 1 of that year, which purports to repeal the act on the same subject of April 18, 1899, which was the statute upon which the suit was based. The Act of 1911 contains no saving clause as to pending proceedings. On error the plaintiff in error argued inasmuch as there was no saving clause as to pending proceedings, the law of 1899 being repealed, this action, which is based upon said law, must abate. The Supreme Court, however, examined the revision of 1911 and found, in the revision, a substantial copy of the sections of the Act of 1899, upon which the plaintiff in that suit based his cause of action, and for that reason the court determined that the legislative intent was to continue those sections of the old act in force the same as if the revision had not taken place. This rule of construction has frequently been announced in this State. *Svenson v. Hanson,* 289 Ill. 242-248; *People v. Brunstrom,* 274 Ill. 62; *Spiehs v. Insull,* 278 Ill. 184.

In Endlich on Interpretation of Statutes, sec. 294, the rule is stated as follows: ''A statute which is amended is thereafter, as to all acts subsequently done, to be construed as if the amendment had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute as it stands if the amendments are introduced and the matters superseded by the amendments are eliminated.''

In Black on Interpretation of Laws, sec. 131, the following rule is announced: ''An amendment of a statute by a subsequent act operates precisely as if the subject matter of the amendment had been incorporated in the prior act at the time of its adoption,

so far as regards any action had after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be to change a word, figure, line or entire section, or a recasting of the whole language.''

The above rule as stated by Black on Interpretation of Laws is cited with approval in the case of *Village of Melrose Park v. Dunnebecke*, 210 Ill. 432.

Applying the above rules, the right of plaintiff in error to a pension continued after the amendment as it did before, equal, as before, to one-half of her husband's salary but the restriction thereon was removed. The restriction being removed the only act to be done after the amendment was the determination of the amount of her pension and the payment of the same. Furthermore, if from the act itself or from the application of the above rules of construction of statutes the legislative intention is obscure, then the court, as we understand it, has the right and should examine the old law, the new law, the mischief and the remedy. *People v. Greer*, 43 Ill. 213; *Peavler v. City of Mt. Vernon*, 158 Ill. App. 610.

Or, as was stated in *People v. Wabash, St. L. & P. Ry. Co.*, 104 Ill. 476 (p. 485): ''In arriving at a proper construction to be placed upon an act of the legislature, it is a legitimate inquiry to ascertain the purpose and object of the law, the evil to be remedied, and the wrong to be righted by the passage of the law.''

The amendment of 1923 examined with this idea in view together with the fact that the only change of the old law by the amendment was the enlargement of the restriction placed by the old law upon the amount of the pension, the only conclusion that can be reached is that it was the legislative intent to provide for a more liberal bounty to pensioners than the restriction in the old law permitted. It is a matter of common knowledge that during recent years living expenses have been greatly increased and that the value of

money or the purchasing power thereof has been very much diminished. May we not then indulge in the presumption that the benevolent object of the legislature in providing for a pension was to provide the widow of a policeman who lost his life in service with the necessities of life.

What reason was there for removing the restriction as to the amount of the pension as to widows whose husbands were killed after July 1, 1923, and not removing it as to widows whose husbands lost their lives prior to July 1, 1923. We understand if there is any language in the amendment which evidences that the legislative intent was to confine the old restrictions to widows whose husbands had been killed prior to the passage of the amendment, and make the enlarged restriction apply only to widows whose husbands were killed after the amendment went into effect, a court construing the legislative intent would be bound by those words but there is no such language in this statute. The construction here contended for by plaintiff in error was given to an amendment in the case of *Smith v. Board Trustees of Firemen's Pension Fund,* 212 Ill. App. 122. In this case Smith died February 25, 1915. At the time of his death he had been for more than 23 years a member of the fire department of the City of Bloomington and was receiving a salary of $70 per month. Bloomington at that time was a city between 25,000 and 75,000 in population and had for many years maintained a paid fire department and had accumulated a pension fund under the Firemen's Pension Act of 1887, although the minimum of said fund had not at that time reached the sum of $25,000. On April 13, 1914, Mrs. Smith, the widow, made application to the board for a pension, which was refused for the reason that the fund had not reached the minimum of $25,000, and on June 3, 1916, she renewed her application and was again refused. Section 4 of the Act there in question, as amended in 1909, provided

in substance that when $25,000 shall be reached and accumulated in said fund said sum shall be retained as a permanent fund and thereafter the annual income of such fund shall be available for the uses and purposes of such pensions.    Section 8 of the Act as amended in 1913 provided that if any member of the fire department shall die while in such service after 20 years and shall leave a widow  *  *  *  such trustees shall direct the payment from such fund to such widow, while unmarried, $35 per month, providing that there shall not be paid a total pension exceeding one-half of the amount of the annual salary of said fireman at the time of his decease.    In 1915 (after Smith's death) an act was passed by the legislature becoming effective July 1 of that year.    Section 8 of the new Act is substantially the same as section 8 of the Act of 1887 as amended in 1913, in so far as the payment of pensions to the widows of deceased firemen who have served 20 years is concerned, except that it raises the amount from $35 to $45 per month and omits the provision that the amount paid shall not exceed one-half of the amount of the annual salary of such deceased fireman.    In that case two contentions were advanced by the appellant why Mrs. Smith was not entitled to a pension and one of these contentions was the Act of 1915 repealed the Act of 1887 without any saving clause.    The Appellate Court, following the decision of *Merlo v. Johnston City, etc., Coal & Mining Co.,* 258 Ill. 328, held:

"It undoubtedly was not the intention of the legislature, by the passage of the Revision Act of 1915, to deprive any person of any benefits which they might have been entitled to under the Act of 1887.    The intention that all such benefits were to be preserved is manifest from sections 1 and 8."

In the case of the *People v. Board Trustees of Firemen's Pension Fund,* 228 Ill. App. 481, a question somewhat analogous to the questions involved in this

case was discussed, and it was there held that a retired fireman was entitled to a pension under a law enacted after his retirement, because the new law contained substantially the same provisions as the law which was in force when the fireman retired.

We are of the opinion that the legislature in enacting the amendment using precisely the same language as was contained in the prior act intended to confer the benefits of the amendment upon those who had been entitled to them under the prior act, and simply to remove the limitation imposed by the prior act upon those who were already enjoying the benefits as well as those who in the future would enjoy them. It was certainly not the intention of the legislature to deprive the plaintiff in error of her pension. If her pension is to be continued it necessarily must be done under the amendment of 1923. We are of the opinion that she is entitled to $60 a month, which is a sum equal to one-half the salary that was drawn by the policeman when he lost his life in the service.

We conclude, therefore, that this cause should be reversed and remanded with instructions to the trial court to overrule the demurrer to the petition, which is accordingly done.

*Reversed and remanded with instructions.*